**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ESPN Inc.,<br><br>*Defendant*. | Civil Action No. 1:22-CV-01523<br>(Judge Christopher C. Conner) |

**BRIEF IN SUPPORT OF ESPN INC.'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................1

FACTUAL BACKGROUND ....................................................................2

A. ESPN's Services. ................................................................2

B. Mr. Swartz Agreed to the Disney+ and ESPN+ Subscription Agreement. ................................................................3

i. Plaintiff Enrolled in and Activated a Disney+ Subscription in November 2019. ................................................3

ii. Plaintiff Enrolled in and Activated a Disney Bundle Subscription in January 2021. ................................................5

C. The 2019 And 2020 Subscription Agreements Include A Prominent Binding Arbitration And Class Action Waiver Provision. ................................................................7

ARGUMENT ..........................................................................................9

A. The FAA Strongly Favors The Enforceability Of Arbitration Agreements. ................................................................9

B. Plaintiff Entered Into Valid And Enforceable Arbitration Agreements With ESPN. ................................................11

i. Plaintiff Agreed to Arbitrate by Assenting to the 2019 Subscription Agreement. ................................................13

ii. Plaintiff Again Agreed to Arbitrate by Assenting to the 2020 Subscription Agreement. ................................................16

C. The Parties' Agreement Grants The Arbitrator Exclusive Authority To Decide Whether The Dispute Falls Within The Scope Of The Arbitration Provision. ................................17

D. If The Court Assesses Arbitrability, Plaintiff's Claims Are Subject To Binding Arbitration On An Individual Basis. ........19

CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....................10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................9, 20

*Banks v. Barclays Bank Credit Servs.*,
No. 1:17-CV-00096, 2018 WL 6576414 (M.D. Pa. Oct. 30, 2018)....................19

*Black v. JP Morgan Chase & Co.*,
No 10-848, 2011 WL 3940236 (W.D. Pa. Aug. 25, 2011) ....................20

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................19

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....................9

*Centrifugal Force, Inc. v. Softnet Commc'n Inc.*,
No. 08 Civ. 5463(CM)(GWG), 2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) ....................15

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
584 F.3d 513 (3d Cir. 2009) ....................12

*Collins v. Mary Kay, Inc.*,
874 F.3d 176 (3d Cir. 2017) ....................12

*Comrey v. Discover Fin. Servs., Inc.*,
806 F. Supp. 2d 778 (M.D. Pa. 2011)....................9

*Coulter v. Experian Info. Sols., Inc.*,
No. 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021)....................2, 14, 16, 20

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................10

*Defillipis v. Dell Fin. Servs.*,
No. 3:14–CV–00115, 2014 WL 4198015 (M.D. Pa. Aug. 22, 2014) ................13

*Defillipis v. Dell Fin. Servs.*,
No. 3:14-CV-00115, 2016 WL 394003 (M.D. Pa. Jan. 29, 2016) .................2, 15

*Dobbs v. Health IQ Ins. Servs., Inc.*,
No. 21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022) ......................2, 15, 16

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)..............................................................13

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).........................................................................................12

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................14

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ...........................................................................11

*Hayes v. Kutty*,
No. 1916 EDA 2016, 2017 WL 3208695 (Pa.Super. July 28, 2017) .................12

*HealthPlanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020).........................................................13, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 U.S. 524 (2019).........................................................................................17

*Kruzits v. Okuma Mach. Tool, Inc.*,
40 F.3d 52 (3d Cir. 1994) ...............................................................................12

*Lloyd v. Hovensa, LLC*,
369 F.3d 263 (3d Cir. 2004) ...........................................................................10

*Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*,
No. 1:13-CV-02449, 2013 WL 6185604 (M.D. Pa. Nov. 25, 2013)..................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).............................................................................................19

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
874 F.Supp. 606 (S.D.N.Y. 1995) ....................12

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................18

*Richardson v. Coverall N. Am., Inc.*,
811 F. App'x 100 (3d Cir. 2020), *cert. denied*, 141 U.S. 1685 (2021)....................19

*S.S. by and through Stern v. Peloton Interactive, Inc.*,
566 F. Supp. 3d 1019 (S.D. Cal., 2021) ....................11

*Schwartz v. Comcast Corp.*,
256 F. App'x 515 (3d Cir. 2007) ....................12

*Sollinger v. SmileDirectClub, LLC*,
19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020), *appeal withdrawn*, Docket No. 20-965, 2020 WL 5525233 (2d Cir. June 19, 2020)....................14

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d Cir. 2005) ....................10

*United States v. MacEwan*,
445 F.3d 237 (3d Cir. 2006) ....................11

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)....................19

**STATUTES:**

9 U.S.C. § 2 ....................9, 10

9 U.S.C. § 3 ....................10

9 U.S.C. § 4 ....................10

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ....................1, 9

**RULES:**

Rule 8(b)....................................................................................................19

Rule 12(b)(6)................................................................................................11

Defendant ESPN Inc. ("ESPN"), submits this memorandum of law in support of its Motion to Compel Arbitration and Stay This Action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16. For the reasons set forth below, the Court should order Plaintiff's claims to individual arbitration and stay this litigation pending the conclusion of individual arbitration proceedings.

## INTRODUCTION

Plaintiff Nate Swartz voluntarily agreed to arbitrate "any dispute" he had with ESPN and he agreed to pursue any dispute on an individual basis rather than on a classwide basis. He did so at least twice, agreeing to arbitrate on an individual basis when he enrolled in and activated his Disney+ subscription on November 12, 2019, and then again on January 3, 2021 when he upgraded his standalone Disney+ subscription to the Disney Bundle, which includes ESPN+. Both agreements—which apply to Plaintiff's Disney+, ESPN+, and Hulu accounts—provided clear and conspicuous notice that they contained a Binding Arbitration and Class Action Waiver provision, requiring that any dispute, action, or other controversy, whether based on past, present, or future events, be submitted to binding arbitration.

Disregarding these broad and unambiguous arbitration provisions, Plaintiff filed this Class Action Complaint ("Complaint") on September 29, 2022. Courts nationwide—including those within the Third Circuit—regularly enforce arbitration agreements similar to the one at issue in a web-based agreement to use a service.

*See, e.g.*, *Defillipis v. Dell Fin. Servs.*, No. 3:14-CV-00115, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016); *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022); *Coulter v. Experian Info. Sols., Inc.*, No. 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021). The same result should follow here. As set forth herein and in the declaration accompanying the underlying motion, Plaintiff had notice that he was entering into the arbitration provision with a class action waiver, was given an opportunity to review the terms of that agreement, and assented to those terms.

Because a valid and enforceable agreement to arbitrate exists between ESPN and Plaintiff, the Court should compel Plaintiff to arbitrate his claims on an individual basis, and should stay this action pending the completion of any individual arbitration proceedings.

## FACTUAL BACKGROUND

### A. ESPN's Services.

ESPN, an indirect subsidiary of The Walt Disney Company, is an entertainment and sports programming company. *See* Declaration of Doron Gura ("Gura Decl.") ¶ 2. ESPN offers a subscription service titled ESPN+, which provides subscribers with access to exclusive ESPN articles and streaming content. *See id*. ESPN+ and Disney+ are both operated by Disney Streaming Services, LLC, and its affiliates ("Disney Streaming"), all indirect subsidiaries of The Walt Disney

Company. *See id*. Disney Streaming offers a combined subscription package titled the Disney Bundle, which includes Disney+ and ESPN+ along with Hulu, another service operated by a subsidiary of The Walt Disney Company. Plaintiff alleges he has been a paid ESPN subscriber since 2017 and an ESPN+ subscriber since 2018. Dkt. No. 1 ("Compl.") ¶ 56.

**B. Mr. Swartz Agreed to the Disney+ and ESPN+ Subscription Agreement.**

Plaintiff has twice enrolled in and activated subscriptions operated by Disney Streaming, which required Plaintiff to assent to the "Disney+ and ESPN+ Subscription Agreement" ("Subscription Agreement"). Gura Decl. ¶¶ 8–13. The terms of the Subscription Agreement applied to Plaintiff's use of the Disney+ and ESPN+ Services, including as relevant to Plaintiff's allegations here: "The ESPN+ website, application and associated content and services." Gura Decl., Ex. C, Ex. D; *see* Compl. ¶¶ 12, 56–58.

***i. Plaintiff Enrolled in and Activated a Disney+ Subscription in November 2019.***

Disney Streaming's business records reflect that, on November 12, 2019, Plaintiff created his first Disney Streaming account, using the email address natemswartz@gmail.com, and enrolled in a standalone Disney+ subscription through a Verizon promotion. Gura Decl. ¶¶ 5–6. Verizon customers like Plaintiff who wished to enroll in and activate a Disney Streaming subscription ("Subscription

Activation Process") were first required to assent to the Subscription Agreement in effect in 2019 ("2019 Subscription Agreement"). *Id.* ¶¶ 7–9. They could not access Disney Streaming services without this assent. *Id.* ¶ 9.

Under the Subscription Activation Process, when Verizon customers enrolled in their Verizon plan, they were directed to the Verizon Disney+ webpage, which provided customers the opportunity to enroll in Disney+ as an "add-on" to their Verizon plan for a 12-month promotional period. *Id.* ¶ 8(a). When selected, customers were taken to the Verizon confirmation webpage. *Id.* ¶ 8(b). Here, the customer was required to acknowledge that the Disney+ offer was subject to Verizon's Terms and Conditions by first checking the "I accept the Terms and Conditions" box before being able to click the "Enroll in Disney+" button. *Id.*

After the customer selected "Enroll in Disney+," they were provided a redemption link that, when clicked, would take the customer to the Disney+ activation webpage. *See id.* ¶ 8(c), Ex. A. The Disney+ activation webpage required the customer to enter their email address. *Id.* ¶ 8(d). The webpage also included a large blue button with white font that stated "Agree & Continue." Immediately above the "Agree & Continue" button were the terms to which customers must acknowledge and agree before completing their subscription activation (the "Activation Acknowledgment"). *Id.* The Disney Activation Acknowledgment stated, in part, "By clicking 'Agree & Continue,' you agree to our Subscriber

Agreement and acknowledge that you have read our Privacy Policy." *Id*. Both the terms "Subscriber Agreement" and "Privacy Policy" were underlined and in blue font to indicate that they were clickable hyperlinks. *Id*. Each led, respectively, to the "Disney+ and ESPN+ Subscriber Agreement" and the Privacy Policy. The very first page of the 2019 Subscription Agreement stated, "THIS AGREEMENT WILL GOVERN YOUR USE OF THE DISNEY+ AND ESPN+ SERVICES." Ex. C at 1 (capitalization in original).

Plaintiff could not have created his Disney+ account in November 2019, nor accessed his Disney+ promotional subscription through Verizon, without first assenting to the 2019 Subscription Agreement. *Id*. ¶ 9.

***ii. Plaintiff Enrolled in and Activated a Disney Bundle Subscription in January 2021.***

On January 3, 2021, Disney Streaming business records reflect that Plaintiff, using the same Gmail address, converted his standalone Disney+ subscription to the Disney Bundle, which included ESPN+, through a second Verizon promotion. Gura Decl. ¶ 10. Similar to the Subscription Activation Process in effect in 2019, Plaintiff was required to assent to the "Disney+ and ESPN+ Subscription Agreement" ("2020 Subscription Agreement") when Plaintiff upgraded to the Disney Bundle. *Id*. ¶¶ 11–13. The 2020 Subscription Agreement was updated as of April 14, 2020, and was in effect in January 2021 when Plaintiff activated his ESPN+ account. *Id*. ¶ 17.

Again, Plaintiff could not have accessed Disney Streaming services, including ESPN+, without first assenting to the 2020 Subscription Agreement. *Id*. ¶ 9.

Under the 2020 Subscription Activation Process, customers were given the opportunity to select the Disney Bundle as an add-on to their Verizon plan for a 12-month promotional period. *Id*. ¶ 12(a). When selected, they were provided a redemption link that, when clicked, would take the customer to the Disney Bundle activation webpage. *Id*. ¶ 12(c); Ex. B. The activation webpage required the customer to enter their email address. *Id*. ¶¶ 12(c)-12(d). The activation webpage also included an "Agree & Continue" button just below the Disney Activation Acknowledgment that stated, in part, "By clicking 'Agree & Continue,' you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." *Id*. ¶ 12(d). Both the terms "Subscriber Agreement" and "Privacy Policy" were underlined and in blue font to indicate that they were clickable hyperlinks. *Id*. Each led, respectively, to the 2020 "Disney+ and ESPN+ Subscriber Agreement" and the Privacy Policy. *Id*. And, like the 2019 Subscription Agreement, the very first page of the 2020 Subscription Agreement stated, "THIS AGREEMENT WILL GOVERN YOUR USE OF THE DISNEY+ AND ESPN+ SERVICES." Ex. D at 1 (capitalization in original).

Plaintiff could not have enrolled in the Disney Bundle in January 2021, nor accessed his Disney Bundle promotional subscription through Verizon—including

enrolling in and activating his ESPN+ Account—without first assenting to the 2020 Subscription Agreement. *Id.* ¶ 13.

### C. The 2019 And 2020 Subscription Agreements Include A Prominent Binding Arbitration And Class Action Waiver Provision.

The 2019 and 2020 Subscription Agreements to which Plaintiff assented to activate and access his Disney+ and Disney Bundle subscriptions, respectively, contained identical Binding Arbitration and Class Action Waiver provisions ("Arbitration Provision"). Gura Decl., Exs. C–D. Both Arbitration Provisions required that "all disputes" be resolved through binding arbitration or small claims court, and must be conducted on an individual rather than classwide basis. *Id.* ¶¶ 15, 18.

In addition, conspicuous notice of the Arbitration Provision was prominently featured on the first page of both Subscription Agreements in all capital letters in bold font, stating:

> **ANY DISPUTE BETWEEN YOU AND US, EXCEPT FOR SMALL CLAIMS, IS SUBJECT TO A CLASS ACTION WAIVER AND MUST BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION. PLEASE READ THE ARBITRATION PROVISION IN THIS AGREEMENT AS IT AFFECTS YOUR RIGHTS UNDER THIS CONTRACT.**

Gura Decl., Ex. C at 1; Ex. D at 1.

Section seven of the Subscription Agreements, titled "Binding Arbitration and Class Action Waiver," further detailed the terms of the Arbitration Provision. The

Arbitration Provision stated at the outset, "PROCEEDINGS TO RESOLVE OR LITIGATE A DISPUTE IN ANY FORUM WILL BE CONDUCTED ON AN INDIVIDUAL BASIS." *Id*., Ex. C at 11, Ex. D at 11 (capitalization in original). It further reiterated that "(n)either you nor Disney+ nor ESPN+ will seek to have a dispute heard as a class action …." *Id*. It next noted that the Arbitration Provision covers "all disputes" between the customer and Disney+, ESPN+, and "any related disputes involving The Walt Disney Company or its affiliates." *Id*. "Dispute" was defined to include "any dispute, action, or other controversy, whether based on past, present, or future events," between the customer and Disney+ and ESPN+ "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." *Id*. The Arbitration Provision also explicitly granted the arbitrator with exclusive authority to determine the scope of the Provision, stating:

> You and Disney+ and/or ESPN+ empower the arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, **including the arbitrability of any dispute** and any claim that all or any part of this Subscriber Agreement are void or voidable.

*Id*. (emphasis added).

The Arbitration Provision further specified that proceedings will be administered by JAMS pursuant to the JAMS Streamlined Arbitration Rules & Procedures. *Id*. Ex. C at 11; Ex. D at 11.

## ARGUMENT

Plaintiff voluntarily entered into valid and enforceable agreements to arbitrate, by which he expressly agreed (i) to pursue his claims with ESPN on an individual basis through arbitration rather than in court or on a classwide basis, and (ii) that an arbitrator, rather than a court, would address the scope and enforceability of the arbitration provision. This Court should therefore order Plaintiff to submit each of his claims to arbitration on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

### A. The FAA Strongly Favors The Enforceability Of Arbitration Agreements.

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA's central provision provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Comrey v. Discover Fin. Servs., Inc.*, 806 F. Supp. 2d 778, 783 (M.D. Pa. 2011) (arbitration agreements must be placed "on equal footing with other contracts").

When, like here, a valid arbitration agreement goes unheeded by one of the parties, a court "shall make an order directing the parties to proceed to arbitration in

accordance with the terms of the agreement," 9 U.S.C. § 4, and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," *id.* § 3. As the Third Circuit has made clear, courts must compel arbitration when (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Indeed, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration" if it concludes that the parties have agreed to arbitrate the dispute, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), and stay litigation pending conclusion of the arbitration. 9 U.S.C. § 3; *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

As discussed in more detail below and in the Gura declaration, the parties unquestionably entered into agreements to arbitrate to which Plaintiff assented. *See* Gura Decl. ¶¶ 5–6, 10–11. These agreements are governed by the FAA because the underlying written contracts involve interstate commerce. *See* 9 U.S.C. § 2 (extending to a written arbitration "provision in any . . . contract evidencing a transaction involving commerce"); *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273–74 (1995) (holding that FAA applies broadly to reach transactions "affecting" commerce). Because Plaintiff allegedly accessed Disney Streaming services, including ESPN+, through the internet—which necessarily involves

interstate commerce—Plaintiff's claims should be submitted to arbitration and the FAA applies. *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal., 2021) ("To the extent the contract [regarding the arbitration provision] pertains to use of Peloton's Services (*e.g.*, its app, website, and on-demand fitness classes), because those services require use of the Internet, the Agreement would involve interstate commerce."); *see also United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) (holding that use of the internet necessarily requires that "data has traveled in interstate commerce").

### B. Plaintiff Entered Into Valid And Enforceable Arbitration Agreements With ESPN.

Plaintiff entered into valid and enforceable arbitration agreements with ESPN when he assented to the 2019 Subscription Agreement when enrolling in and activating his Disney+ subscription on November 12, 2019, and again when he assented to the updated 2020 Subscription Agreement when enrolling in and activating his Disney Bundle subscription on January 3, 2021. Gura Decl. ¶¶ 6–9, 10–13.[1]

[1] Motions to compel arbitration are reviewed under a Rule 12(b)(6) standard when it is clear from the face of the complaint and documents relied upon therein that a plaintiff's claims are subject to an enforceable arbitration clause. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

Courts apply ordinary state-law principles governing contract formation to determine whether parties validly entered into an agreement containing an arbitration clause. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A contract exists where the parties mutually manifest assent to the terms of the agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2009) (applying Pennsylvania law).[2] A party's "failure to read a contract does not excuse a party from being bound by its terms." *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007); *see also Bollinger v. Cent. Pennsylvania Quarry Stripping & Const. Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood

[2] In diversity cases, federal courts "look to the choice-of-law rules of the forum state," *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017), and Pennsylvania courts "generally . . . enforce choice of law provisions." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Because the Subscription Agreements contain a clear choice-of-law provision, *see* Gura Decl., Ex. C at 15; Ex. D at 15, the law of New York governs Plaintiff's claims. However, the Court need not resolve any choice of law issues because the outcome of this motion is the same under the law of Pennsylvania or New York: an agreement containing an arbitration clause exists between Mr. Swartz and ESPN. *Compare Hayes v. Kutty*, No. 1916 EDA 2016, 2017 WL 3208695, at *4 (Pa.Super. July 28, 2017) (a binding contract was created where there was "offer, acceptance and consideration") *with N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F.Supp. 606, 610-611 (S.D.N.Y. 1995) ("Under . . . New York . . . law, the general requisites for formation of a contract include offer, acceptance, and consideration.").

what he was signing.”). Because Plaintiff manifested assent to both the 2019 and 2020 Subscription Agreements, his claims are subject to arbitration.

#### *i.* ***Plaintiff Agreed to Arbitrate by Assenting to the 2019 Subscription Agreement.***

A contract to arbitrate was formed between Mr. Swartz and ESPN because he had notice of and agreed to the 2019 Subscription Agreement, including the Arbitration Provision therein, when activating his Disney+ subscription in November 2019. *See* Gura Decl. ¶¶ 6–9. The 2019 Subscription Agreement stated in no uncertain terms that, “THIS AGREEMENT WILL GOVERN YOUR USE OF THE DISNEY+ AND ESPN+ SERVICES.” Ex. C at 1. Plaintiff affirmatively clicked the “Agree & Continue” button placed directly under the Disney Activation Acknowledgement, which indicated that, by clicking “Agree & Continue,” Plaintiff consented to the hyperlinked Subscription Agreement and Privacy Policy. *Id.*

An agreement assented to by a user’s click (“clickwrap agreement”) is enforceable as long as the plaintiff had “reasonable notice of and manifested assent to the clickwrap agreement.” *Defillipis v. Dell Fin. Servs.*, No. 3:14–CV–00115, 2014 WL 4198015, at *6 (M.D. Pa. Aug. 22, 2014) (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)). “Clickwrap agreements are increasingly common and have routinely been upheld,” where, as here, a plaintiff manifests assent after receiving reasonable notice of the terms. *Id*. (cleaned up); *see also HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 330-31 (W.D. Pa.

2020) (enforcing agreement where a statement below the log-in box read "Use of [site] constitutes acceptance of the [hyperlinked] End User License Agreement") (internal quotations omitted); *Sollinger v. SmileDirectClub, LLC*, 19-CV-5977 (JPO), 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020), *appeal withdrawn*, Docket No. 20-965, 2020 WL 5525233 (2d Cir. June 19, 2020) ("In New York, clickwrap agreements are valid and enforceable contracts.") (citations omitted); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) (enforcing clickwrap agreement where plaintiff "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences").

Plaintiff was provided with conspicuous notice that clicking the "Agree & Continue" button would constitute assent to the 2019 Subscription Agreement. Courts routinely enforce comparable clickwrap agreements. For instance, in *Coulter v. Experian Information Solutions, Inc.*, the Eastern District of Pennsylvania found that plaintiff was provided reasonable notice because he was advised that "[b]y clicking 'Submit Secure Order': [He] accept[s] and agree[s] to [their] Terms of Use Agreement." 2021 WL 735726, at *5. The same is true here. The 2019 Subscription Agreement was expressly referenced and hyperlinked in blue font and underlined in the Activation Acknowledgment located directly above the "Agree & Continue" button, which unequivocally stated, "By clicking 'Agree & Continue," you agree to

our Subscriber Agreement and acknowledge that you have read our Privacy Policy." Gura Decl., Ex. A at 5, Ex. B at 7. Similarly, in *Dobbs v. Health IQ Insurance Services, Inc.*, the court held that a plaintiff received notice of and assented to the Terms of Use by clicking a "SUBMIT" button when the webpage included the Terms of Use as a hyperlink "purposely and conspicuously set off from the remaining text in a blue, underlined font" and the webpage informed Plaintiff that "[b]y clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use." 2022 WL 2974713, at *4. "[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket." *Defillipis*, 2016 WL 394003, at *10. Whether or not the consumer bothers to look at the agreement is irrelevant; "[f]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract.'" *Id.* (citing *Centrifugal Force, Inc. v. Softnet Commc'n Inc.*, No. 08 Civ. 5463(CM)(GWG), 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011)).

The straightforward disclosure located directly above its "Agree & Continue" button, with hyperlinks in blue against a black background, offered a clear and conspicuous notice to Plaintiff that clicking the button constituted his agreement to the 2019 Subscription Agreement. For these reasons, Plaintiff agreed to the Arbitration Provision in the 2019 Subscription Agreement.

#### *ii. Plaintiff Again Agreed to Arbitrate by Assenting to the 2020 Subscription Agreement.*

A contract to arbitrate was again formed between Mr. Swartz and ESPN because he had notice of and agreed to the 2020 Subscription Agreement, including the Arbitration Provision therein, when activating his Disney Bundle subscription in January 2021. Gura Decl. ¶¶ 10–13. Like his agreement to the 2019 Subscription Agreement, Plaintiff affirmatively clicked the "Agree & Continue" button placed directly under the Disney Activation Acknowledgement in January 2021, which indicated that, by clicking "Agree & Continue," Plaintiff consented to the hyperlinked Subscription Agreement and Privacy Policy. *Id.*

The January 2021 Disney Bundle activation webpage provided clear and conspicuous notice that clicking "Agree & Continue" constituted assent to the 2020 Subscription Agreement. *Id.*, Ex. A at 5, Ex. B at 7. Just as in *Coulter* and *Dobbs*, the 2020 Subscription Agreement was expressly referenced and hyperlinked in blue font and underlined in the Activation Acknowledgment located directly above the "Agree & Continue" button, which unequivocally stated, "By clicking 'Agree & Continue," you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." Gura Decl., ¶ 12(d); 2021 WL 735726, at *5; 2022 WL 2974713, at *4. Like the 2019 Subscription Agreement, the 2020 Subscription Agreement stated in no uncertain terms that "THIS AGREEMENT WILL GOVERN

YOUR USE OF THE DISNEY+ AND ESPN+ SERVICES." Ex. D at 1 (capitalization in original).

Thus, Plaintiff agreed to the arbitration agreement in the 2020 Subscription Agreement when affirmatively clicking "Agree & Continue" to activate his Disney Bundle account, which included ESPN+.

### C. The Parties' Agreement Grants The Arbitrator Exclusive Authority To Decide Whether The Dispute Falls Within The Scope Of The Arbitration Provision.

Although Plaintiff may dispute whether the Complaint falls within the scope of the Arbitration Provision, or he may make some other challenge to the enforceability of the agreement, any such issues are for the arbitrator to decide. Where there is silence on the scope of an arbitration agreement, a court must decide whether a particular claim falls within its scope; but where the parties clearly delegate questions of enforceability and scope to the arbitrator, courts must enforce that delegation. *See HealthplanCRM, LLC*, 458 F. Supp. 3d at 322; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 U.S. 524, 529 (2019) (contracting parties "may agree to have an arbitrator decide…gateway questions of arbitrability" and when they have done so, "a court may not override the contract"). "In those circumstances, a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529. Here, the

issue of the Arbitration Provisions' scope and enforceability is clearly delegated to the arbitrator based on the terms of the Arbitration Provisions.

The plain language of the Subscriber Agreements' Arbitration Provisions expressly delegates the "arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, **including the arbitrability of any dispute**…." Gura Decl., Ex. C at 11, Ex. D at 11 (emphasis added). This is a textbook example of a clear and unmistakable delegation provision that is routinely enforced. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (enforcing a delegation provision stating the "[t]he Arbitrator … shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement …."). Plaintiff thus expressly agreed to delegate arbitrability and the scope of the provision to the arbitrator when he agreed to the Subscription Agreements.

The parties also agreed to delegate arbitrability to the arbitrator because the Subscription Agreements explicitly incorporated the JAMS Rules. *See* Gura Decl., Ex. C at 11, Ex. D at 11. The JAMS Rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." JAMS Streamlined Arbitration

Rules & Procedures, Rule 8(b), available at https://www.jamsadr.com/rules-streamlined-arbitration (last visited Dec. 9, 2022). Incorporation of arbitration rules that themselves reserve the question of arbitrability for the arbitrator "constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability]." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020), *cert. denied*, 141 U.S. 1685 (2021) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015)).

### D. If The Court Assesses Arbitrability, Plaintiff's Claims Are Subject To Binding Arbitration On An Individual Basis.

For the reasons explained above, the arbitrator is the responsible party for assessing any challenges to the enforceability or scope of the arbitration agreement. However, if the Court were to assess these issues, the FAA requires "'any doubts concerning the scope of arbitrable issues' to be 'resolved in favor of arbitration.'" *Banks v. Barclays Bank Credit Servs.*, No. 1:17-CV-00096, 2018 WL 6576414, at *6 (M.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, No. 1:17-CV-96, 2018 WL 6567710 (M.D. Pa. Dec. 13, 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-85 (1960).

In applying these standards, courts hold that agreements requiring arbitration of the type of language used here, involving any dispute, claim or controversy arising out of or relating to this agreement, is broad and presumptively covers all disputes

between the parties. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (enforcing arbitration agreement governing "all" disputes); *see also Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*, No. 1:13-CV-02449, 2013 WL 6185604, at *4 (M.D. Pa. Nov. 25, 2013) ("There is … a presumption that the claims fall under the arbitration clause when the provision broadly encompasses all disputes arising from or relating to the arbitration agreement."). The Arbitration Provision here requires binding arbitration of "any dispute," including "any dispute, action, or other controversy, whether based on past, present, or future events," between the customer and the Disney+ and ESPN+ businesses "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." Gura Decl., Ex. C at 11, Ex. D at 11. This type of language has repeatedly been found to be "of the broadest nature" encompassing all disputes between the parties. *Black v. JP Morgan Chase & Co.*, No 10-848, 2011 WL 3940236, at *6 (W.D. Pa. Aug. 25, 2011).

Finally, because the Arbitration Provisions contained a clear class action waiver and stated that any dispute must be conducted on an individual basis, Gura Decl., Ex. C at 11, Ex. D at 11, Plaintiff may only bring his claims against ESPN on an individual basis. *See Coulter*, 2021 WL 735726, at *5.

## CONCLUSION

For the foregoing reasons, ESPN respectfully requests that the Court issue an order granting the Motion, compelling arbitration, and staying this action pending the completion of individual arbitration proceedings.

Dated: December 12, 2022

Respectfully submitted,

By: /s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA ID # 322093)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Allison M. Holt Ryan (*pro hac vice* forthcoming)
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
allison.holt-ryan@hoganlovells.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 12, 2022, a true and correct copy of the foregoing document was filed using the Court's CM/ECF System, which will serve all counsel of record. The following parties received electronic service through the ECF system:

Dated: December 12, 2022 By: /s/ *Jasmeet K. Ahuja*

## CERTIFICATE OF CONCURRENCE

I hereby certify that pursuant to Local Rule 7.1, counsel for movants sought concurrence from the parties. Plaintiff's counsel did not concur.

Dated: December 12, 2022 By: /s/ *Jasmeet K. Ahuja*

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br>*Plaintiff*,<br>v.<br>ESPN Inc.,<br>*Defendant*. | Civil Action No. 1:22-CV-01523<br>(Judge Christopher C. Conner) |

**LOCAL RULE 7.8(b)(2) CERTIFICATE**

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Brief in Support of Defendant's Motion to Dismiss consists of 4,710 words, exclusive of the caption, Table of Contents and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: December 12, 2022 By: /s/ *Jasmeet K. Ahuja*