**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NATE SWARTZ, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ESPN Inc.,

Defendant.

Case No.: 1:22-cv-01523

# BRIEF IN OPPOSITION TO ESPN INC.'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................1

II. FACTUAL BACKGROUND ....................................................................1

III. ARGUMENT ..........................................................................................4

A. Legal Standard ......................................................................................4

B. The Motion Is Decided Under Rule 56 ......................................................5

C. Pennsylvania Law Applies to This Analysis ................................................6

D. The Current Facts Do Not Establish a Binding Agreement to Arbitrate With ESPN ....................................................................................................7

i. Mr. Swartz Did Not Have Reasonable Notice that Any Agreement He Made with Disney+ Also Included ESPN. ................................................8

ii. Hidden Hyperlinks Are Not Reasonably Conspicuous. ...........................12

iii. Defendant's Cited Cases Are Distinguishable. .......................................17

E. Plaintiff is Entitled to Limited Discovery Over the Validity of Any Arbitration Agreement ..................................................................................19

IV. CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliments Krispy Kernels, Inc. v. Nichols Farms*,
851 F. 3d 283 (3d Cir. 2017) ....................6

*Bair v. Manor Care of Elizabethtown, PA, LLC*,
108 A.3d 94 (Pa. Super. Ct. 2015)....................12

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................14

*Coulter v. Experian Information Solutions*,
2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021) ....................17, 18, 19

*Dobbs v. Health IQ Insurance Services, Inc.*,
Civil Action No. 21-5276, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022) ....................18, 19

*Engen v. Grocery Delivery E-Services USA Inc.*,
453 F. Supp. 3d 1231 (D. Minn. 2020)....................10

*Flintkote Co. v. Aviva PLC*,
769 F.3d 215, 220 (3d Cir. 2014) ....................5

*Hine v. LendingClub Corp.*,
No. 2:22-CV-00362-CRE, 2022 WL 16950409 (W.D. Pa. Nov. 15, 2022) ....................11, 12

*Hite v. Lush Internet Inc.*,
244 F. Supp. 3d 444 (D.N.J. 2017)....................12

*Holbrow v. MyLife.com*,
Civ. Action No. 21-819, 2021 WL 5235278 (E.D. Pa. Nov. 10, 2021) ....................5, 19

*Holdbrook Pediatric Dental CLL v. Pro Computer Service, LLC*,
Civil No. 14-6115, 2015 WL 4476017 (D.N.J. July 21, 2015) ....................5, 19

*Horton v. FedChoice Federal Credit Union*,
688 Fed. Appx. 153 (3d Cir. 2017)....................................................................19

*Jaludi v. Citigroup*,
933 F.3d 246 (3d Cir. 2019) ..............................................................................5

*James v. Global TelLink Corp.*,
852 F.3d 262 (3d Cir. 2017) ............................................................................12

*Jean v. Bucknell University*,
No. 4:20-cv-01722, 2021 WL 1521724 (M.D. Pa. Apr. 16, 2021) .......................5

*Kaneff v. Delaware Title Loans, Inc.*,
587 F.3d 616 (3d Cir. 2009) ..............................................................................7

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009) ..............................................................................5

*Lewandowski v. Megabus USA, LLC*,
No. 2:20-cv-241, 2020 WL 2486653 (W.D.Pa. May 14, 2020)........................5, 8

*Lopez v. Dave Inc.*,
Case No. 22-cv-04160-VC, 2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) .........................................................................................................14

*McDaid v. Avant, LLC*,
No. 2:21-CV-01135-RJC, 2021 WL 9803613 (W.D. Pa. Oct. 26, 2021) ...............................................................................................................20

*Murray v. Grocery Delivery E-Services USA Inc.*,
460 F.Supp.3d 93 (D. Mass. 2020)....................................................................10

*Optimum Construction, Inc. v. Harbor Business Compliance Corporation*,
Civ. Action MJM-21-2432, 2022 WL 4608170 (D. Md. Sept. 30, 2022..................................................................................................................11

*Putt v. TripAdvisor Inc.*,
Civ. No. 20-3836, 2021 WL 242470 (E.D. Pa. Jan. 25, 2021)...........................20

*Roman v. Prince Telecom, LLC*,
No. 1:21-CV-693, 2022 WL 683031 (M.D. Pa. Jan. 26, 2022) .........................20

*Schwartz v. Comcast Corp.*,
256 Fed. Appx. 515 (3d Cir. 2007)....................................................................7

*Scott v. Education Management Corporation*,
662 Fed. Appx. 126 (3d Cir. 2016)....................................................................7

*Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*,
999 F.3d 828 (2d Cir. 2021) ..........................................................................16

*Starke v. SquareTrade, Inc.*
913 F.3d 279 (2d Cir. 2019) ..........................................................................15

**Other Authorities**

Bristol, CT. *ESPN Address Information*,
https://www.espn.com/espn/news/story?page=contact/usmail ............................7

Burbank, CA. *How do I contact Walt Disney Pictures and Walt Disney Studios?*, https://support.disney.com/hc/en-us/articles/360000829806-How-do-I-contact-Walt-Disney-Pictures-and-Walt-Disney-Studios-....................................................................7

Fed. R. Civ. P. 12 ..............................................................................................5

Restatement (Second) of Conflicts of Law § 188.....................................................6

Rule 56 ...................................................................................................5, 6, 19

## I. INTRODUCTION

Defendant ESPN argues that Mr. Swartz agreed to arbitration and gave up his rights to proceed in this Court, because:

- after using the ESPN Insider service for two years, Mr. Swartz, while trying to sign up for a separate company's (Disney) service;
- clicked through five different pages on yet another company's (Verizon) website;
- which eventually took Mr. Swartz to a page with a hyperlink;
- which Mr. Swartz did not click on but, if he had, would have brought him to a different page that would have mentioned the arbitration provision;
- but which would only have been fully revealed on yet another page.

This tortured chain of events does not show that Mr. Swartz ever agreed to, or manifested his assent to, arbitration. Therefore, ESPN's motion to compel arbitration must fail.

## II. FACTUAL BACKGROUND

In support of this Opposition, Mr. Swartz also submits a Declaration, attached as Exhibit 1 ("Swartz Decl.").

Mr. Swartz signed up for ESPN Insider, ESPN's video streaming service at the time, as early as 2017. Swartz Decl. ¶ 3. He does not recall receiving, viewing, or agreeing to any Subscription Agreement containing any arbitration agreement

when he subscribed to ESPN Insider in January 2017. Swartz Decl. ¶ 4. ESPN does not suggest that anything in Mr. Swartz's ESPN Insider subscription compels arbitration.

At some point in November 2019 Mr. Swartz decided to sign up for a Disney+ subscription through a separate company, Verizon. Swartz Decl. ¶ 5. Mr. Swartz does not recall the steps of the subscription process or whether it was done online. Swartz Decl. ¶ 6.

According to the Declaration Defendant submitted with its Motion to Compel Arbitration ("Gura Decl."), Mr. Swartz had to go through numerous online steps and view numerous different screens to complete this subscription:

(1) First, Mr. Swartz selected a Verizon promotion.

(2) Then, once he was enrolled, he was directed to a Verizon Disney+ webpage, advertising an opportunity to enroll in Disney+ for a 12-month promotional period as an "add-on" to the Verizon plan, if he clicked on a black button saying, "Get Disney+."

(3) When he clicked on the "Get Disney+" button, he was taken to a Verizon Confirmation Webpage. On this webpage, was a box next to the statement "I accept the Terms and Conditions" and an "Enroll in Disney+ button." The Terms and Conditions contained a hyperlink to Verizon's terms and conditions.

(4) He checked the box next to the statement "I accept the Terms and Conditions" and clicked "Enroll in Disney+." He was then brought to a Verizon webpage with a "Continue" button on it. No terms or conditions or any hyperlinks appeared on this webpage.

(5) He clicked the "Continue" button. Mr. Swartz was then brought to the Disney+ activation webpage, which contained a space for him to enter his email address. Underneath that space there is a large blue button saying, "Agree & Continue." Above that button in much smaller white font reads, "Disney will use your data to personalize and improve your Disney+ experience and to send you information about Disney+. You can change your communication preferences anytime. We may use your data as described in our Privacy Policy, including sharing it with the family of companies. By clicking "Agree & Continue," you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." The terms "Subscriber Agreement" and "Privacy Policy" were hyperlinked; had Mr. Swartz clicked on them he would have been sent to still other webpages containing those policies. Gura Decl. ¶ 8(a)-(e); Def. Exhibit A.

(6) Mr. Swartz next clicked the "Agree & Continue" button. He was then prompted to create a password, which completed his subscription process.

According to Defendant, Mr. Swartz took substantially the same steps to subscribe to the "Disney Bundle" in 2021. Gura Decl. ¶ 12 (a)-(e); Def. Exhibit B.

While Mr. Swartz recalls deciding to sign up for Disney's services sometime in 2021, he does not recall exactly what date he did so, nor whether the sign-up process was done online. Swartz Decl. ¶ 17. He also does not recall engaging in the January 2021 Subscription Activation Process. Swartz Decl. ¶ 18. Mr. Swartz also did understand that signing up for Disney streaming services would change the terms of his ESPN subscription. Swartz Decl. ¶ 26.

In both 2019 and 2021, Mr. Swartz does not recall seeing or clicking on the Terms and Conditions hyperlink on the Verizon confirmation webpage at the beginning of the Subscription Activation process. Swartz Decl. ¶ 8, 20. He did not understand whether the "I accept the Terms and Conditions" box applied to his Verizon subscription or his Disney+ subscription. Swartz Decl. ¶ 9, 21.

In both 2019 and 2021, Mr. Swartz does not recall seeing or clicking on the Subscriber Agreement hyperlink. Swartz Decl. ¶ 15, 27. He did not understand that clicking on "Agree & Continue" for Disney+ and Disney Bundle subscriptions would apply to his existing ESPN Insider subscription or change his existing ESPN streaming subscription in any way. Swartz Decl. ¶ 16, 28.

## III. ARGUMENT

### A. Legal Standard

When considering a motion to compel arbitration, the Court must first determine whether the parties entered into a valid arbitration agreement.

*Lewandowski v. Megabus USA, LLC*, No. 2:20-cv-241, 2020 WL 2486653, at *2 (W.D.Pa. May 14, 2020) (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). While Defendant argues that the Federal Arbitration Agreement ("FAA") creates a presumption in favor of arbitration, that presumption does not apply to the determination of whether there is a valid agreement to arbitrate between the parties, *Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d Cir. 2019) ("The presumption of arbitrability enters at the second step—it applies to disputes about the scope of an existing arbitration clause."); *Flintkote Co.* at 220 n.3 (3d Cir. 2014) (the presumption in favor of arbitrability applies when interpreting the scope of the arbitration agreement, not when deciding whether a valid agreement exists); *Jean v. Bucknell University*, No. 4:20-cv-01722, 2021 WL 1521724, *3 (M.D. Pa. Apr. 16, 2021) (presumption does not apply when considering the validity of an arbitration agreement) (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

**B. The Motion Is Decided Under Rule 56**

The question of whether an agreement to arbitrate exists should be judged under the standard of Fed. R. Civ. P. 56, not Fed. R. Civ. P. 12, in this case because arbitrability is not apparent on the face of the complaint. *Holdbrook Pediatric Dental CLL v. Pro Computer Service, LLC*, Civil No. 14-6115, 2015 WL 4476017, *2 (D.N.J. July 21, 2015) (citing *Guidotti* at 774 and *Holbrow v. MyLife.com*, Civ.

Action No. 21-819, 2021 WL 5235278, at *2 (E.D. Pa. Nov. 10, 2021) ("If, however, 'the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue' then courts should consider the motion to compel arbitration under a Rule 56 standard.") (citing *Guidotti* at 776). Since Mr. Swartz did not allege any facts about the issue of arbitration in his Complaint, and has stated facts contrary to those in ESPN's Gura Declaration, the summary judgment standard of Rule 56 applies.

### C. Pennsylvania Law Applies to This Analysis

The applicable state law governs whether a valid agreement to arbitrate exists. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F. 3d 283, 289 (3d Cir. 2017). To determine what state law is applicable, courts turn to the forum state's, (Pennsylvania's), choice-of-law rules. *Id*. In Pennsylvania, the law of the state specified in the contract will usually be applied unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflicts of Law], would be the state of the applicable law in the absence of an effective choice of law

by the parties. *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009) (applying Pennsylvania law despite a Delaware choice-of-law clause). Here, while New York is specified in the arbitration clause, that state has no substantial relationship to the parties or the transaction, as Mr. Swartz is a resident of Pennsylvania; completed the 2017, 2019, and 2021 subscription transactions in Pennsylvania; ESPN's headquarters are in Connecticut;[1] and Disney's headquarters are in California.[2] Thus, Pennsylvania law should apply. It should be noted that Defendant acknowledged there is not a substantive difference between the laws of Pennsylvania and New York, ESPN Brief at p. 12, footnote 2.

**D. The Current Facts Do Not Establish a Binding Agreement to Arbitrate With ESPN**

Even accepting all the currently available facts as true, no valid agreement to arbitrate exists. Pennsylvania law assigns Defendant the burden of demonstrating that a valid agreement to arbitrate exists. *Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515, 518 (3d Cir. 2007). Any agreement to arbitrate must be "clear and unmistakable," and such agreements "should not be extended by implication." *Scott*

---

[1] According to ESPN's official website, the address listed for ESPN.com, ESPN Television, and ESPN Mobile Products is in Bristol, CT. *ESPN Address Information,* https://www.espn.com/espn/news/story?page=contact/usmail.

[2] According to Disney's official website, the address listed for Walt Disney Pictures and Walt Disney Studios Home Entertainment is in Burbank, CA. *How do I contact Walt Disney Pictures and Walt Disney Studios?*, https://support.disney.com/hc/en-us/articles/360000829806-How-do-I-contact-Walt-Disney-Pictures-and-Walt-Disney-Studios-

*v. Education Management Corporation*, 662 Fed. Appx. 126, 131 (3d Cir. 2016). Under Pennsylvania law, a valid agreement to arbitrate requires: "(1) a mutual manifestation of intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration." *Lewandowski*, at *3 (W.D.Pa. May 14, 2020) (internal citation omitted). Mr. Swartz did not manifest any intention to be bound by any arbitration agreement.

**i. Mr. Swartz Did Not Have Reasonable Notice that Any Agreement He Made with Disney+ Also Included ESPN.**

Significantly, it was very unclear throughout the 2019 and 2021 subscription processes that by clicking "Agree & Continue" on the Disney webpage, Mr. Swartz was agreeing to a Subscriber Agreement that changed the terms of his existing ESPN subscription. *See* Swartz Decl. at ¶ 16, 28. In fact, even assuming Defendant's facts as alleged, throughout all the numerous steps and different webpages during the 2019 process there was no mention of ESPN unless one actually clicked on the Subscriber Agreement hyperlink and read it *See* Def. Exhibit A.

Mr. Swartz subscribed to ESPN video streaming as early as January 2017 when it was called ESPN Insider and was unaffiliated with Disney's streaming services. Swartz Decl. at ¶ 3. At no point did Mr. Swartz understand that joining Disney services would change his existing ESPN subscription. *See* Swartz Decl. at ¶ 28. And, as he did not click on the Service Agreement hyperlink, he was not aware that the Disney+ agreement incorporated ESPN. *See* Swartz Decl. at ¶ 12.

Indeed, Defendant's Exhibit A reflects the fact that none of the numerous webpages throughout the Disney+ subscription process alerted the viewer that ESPN was part of Disney+; although they did show that Pixar, Marvel, Star Wars, and National Geographic were included through prominent and colorful graphics of the logos, as well as through text: "Only Disney+ gives you endless access to your favorite movies and TV series from Disney, Pixar, Marvel, Star Wars, and National Geographic. First year of Disney+ on us. Then $6.99/mo after." There is absolutely no mention of ESPN. *See* Gura Decl. at ¶ 8; Def. Exhibit A.

When Mr. Swartz subscribed to the Disney Bundle in 2021, he was also unaware that the Subscriber Agreement constituted an agreement for ESPN+ as well, especially considering he had already been subscribed to ESPN video streaming since at least January 2017. Swartz Decl. at ¶ 3. Although Defendant's Exhibit B shows that the Disney Bundle subscription process includes graphics for Disney+, Hulu, and ESPN+, the actual text of the box containing the Subscriber Agreement hyperlink only makes mention of Disney+. It does not make any mention of ESPN+, reading: "**Disney** will use our data to personalize and improve your **Disney**+ experience and to send you information about Disney+. You can change your communication preferences anytime. We may use your data as described in our Privacy Policy, including sharing it with the family of companies. By clicking "Agree & Continue," you agree to our Subscriber Agreement and acknowledge that

you have read our Privacy Policy. *See* Gura Decl. at ¶ 12(d); Def. Exhibit B (emphasis added). No reasonable person would interpret this language to mean that the terms of their separate and preexisting ESPN subscription were being changed.

The confusing and unacceptable nature of language changing other agreements was controlling in *Engen v. Grocery Delivery E-Services USA Inc.*, in which the court denied a motion to compel arbitration where the plaintiff accepted 2016 terms and conditions but did not receive sufficient notice of the changed 2018 terms and conditions. 453 F. Supp. 3d 1231 (D. Minn. 2020). The court reached this conclusion even though the defendant had sent the plaintiff numerous emails after the terms and conditions were updated, informing her that the use of its services and website was subject to its terms of use, including a hyperlink. *Id.* at 1240. The court found it significant that none of those numerous emails were sent with the distinct purpose of informing plaintiff of the modifications to the terms and conditions, the emails did not state that defendant's terms and conditions had been modified, and they did not mention anything about the inclusion of an arbitration provision. *Id*; *see also Murray v. Grocery Delivery E-Services USA Inc.*, 460 F.Supp.3d 93, at *94, 98 (D. Mass. 2020) (denying motion to compel arbitration where plaintiff accepted 2015 terms and conditions but did not receive sufficient notice of changed 2017 terms and conditions because the "new terms were hyperlinked at the bottom of a page full of loud, colorful text regarding sales…were hidden in small print in a

paragraph of other text and there was nothing to draw attention to them or to suggest a change…[and] were not conspicuously communicated to [plaintiff]"); and *Optimum Construction, Inc. v. Harbor Business Compliance Corporation*, Civ. Action MJM-21-2432, 2022 WL 4608170, at *6 (D. Md. Sept. 30, 2022) ("…there is no evidence that [defendant] ever notified [plaintiff] that the terms of use had been modified or 'updated' at any point. Without notice of any modifications or updates, [plaintiff] would have no reason to review the terms of use at any point after it established its account in October 2017. The Court cannot find that a reasonably prudent user in [plaintiff's] position would have been on inquiry notice of any modifications in [defendant's] terms of use…").

Here, Defendant has provided no evidence that it ever notified Mr. Swartz, via email or via any other method, about the significant change to his rights in relation to ESPN—namely, that ESPN video streaming was now a part of Disney+ and thus any new agreements he made with Disney+ would include a new agreement with ESPN, invalidating any prior agreement he had with ESPN. Under these circumstances, Mr. Swartz did not receive sufficient notice that he was changing the terms of his agreement with ESPN. Therefore, the Subscriber Agreement simply did not provide "reasonably conspicuous" notice of an arbitration agreement, so Mr. Swartz's manifestation of assent to an arbitration clause with ESPN was simply not "unambiguous as a matter of law." *Hine,* 2022 WL 16950409 at *4.

**ii. Hidden Hyperlinks Are Not Reasonably Conspicuous.**

The touchstone of any valid agreement is mutual assent. *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. Ct. 2015). In cases of online agreements, this issue often turns on whether "notice of the agreement was 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'" *Hine v. LendingClub Corp.*, No. 2:22-CV-00362-CRE, 2022 WL 16950409, *4 (W.D. Pa. Nov. 15, 2022); *see also Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 452 (D.N.J. 2017) (denying motion to compel arbitration, finding, "[a]bsent knowledge and assent to the Terms of Use, Plaintiff cannot be bound by the provisions, including the mandatory arbitration clause"). The issue of assent often turns on whether the terms or a hyperlink to the terms are reasonably conspicuous. *See James v. Global TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017) ("There is an evolving body of caselaw regarding whether the terms and conditions in browsewrap agreements are enforceable, often turning on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage.").

Here, the hyperlink to the Subscriber Agreement which contained the arbitration clause was not reasonably conspicuous nor clearly related to Mr. Swartz's ESPN subscription. In both the 2019 and 2021 subscription processes, the webpage containing the Disney Subscriber Agreement buried it at the bottom of the page in small white font, amongst a wordy disclaimer, directly above a large blue button

reading "Agree & Continue." *See* Gura Decl. at ¶ 8(d) 12(d); Def. Exhibit A; Def. Def. Exhibit B. About one-quarter of the page is taken up by a colorful picture of a family and all larger font is used throughout the rest of the webpage. *See* Def. Exhibit A; Def. Exhibit B. Other than clicking the "Agree & Continue" button, Mr. Swartz also had to enter his email on this page and check the box that would allow him to receive promotions. *See id*.



Therefore, the design of the webpage stole the viewer's attention away from the small box containing the Disney Subscriber Agreement hyperlink. This was only exacerbated by the fact that Mr. Swartz could only have gotten to the page with the Subscriber Agreement hyperlink after clicking through at least three prior screens. *See* Def. Exhibit A; Def. Exhibit B.

Another circuit has held that where "the design and content of these webpages draw the user's attention away from the most important part of the page," an arbitration clause is not valid as it does not provide reasonably conspicuous notice. *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). In *Berman*, the text containing the hyperlink for the terms and conditions was printed in tiny gray font considerably smaller than the font used in the surrounding website elements such that "the comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id*. at 856. The visual elements also "draw the user's attention away from the barely readable critical text" and therefore did not "capture the user's attention and secure her assent." *Id*. at 856-57. *See also Lopez v. Dave Inc.*, Case No. 22-cv-04160-VC, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (denying motion to compel because the text disclosing the agreement on the sign-up page was printed in tiny gray font considerably smaller than the font used in the surrounding website elements, a problem which was "exacerbated" by the comparatively larger font of the "join" button and a cartoon

bear that drew the user's attention away from the "barely readable critical text," among other reasons).

Similarly, the Second Circuit affirmed the district court's rejection of a motion to compel arbitration, explaining: "The 'Terms & Conditions' hyperlink is some of the smallest text in the email and comes after several prompts unrelated to the enclosure of the contract…". *Starke v. SquareTrade, Inc.*913 F.3d 279, 293 (2d Cir. 2019).[3] Such is the case here, where the Subscriber Agreement hyperlink was part of a series of sentences containing the smallest font on the page, was surrounded by larger font and distracting visual elements. The Subscriber Agreement hyperlink also came after Mr. Swartz was required to affirmatively fulfill several "prompts unrelated to the enclosure of the contract," such as put in his email address and check a box for promotional offers. *Id.*

Moreover, the hyperlink which contains the arbitration clause is surrounded by completely unrelated text about privacy matters, misleading the viewer into believing the Subscriber Agreement would contain further information related to privacy, rather than anything related to arbitration. Indeed, the paragraph or box containing the Subscriber Agreement hyperlink only discusses privacy and data, reading, "Disney will use your data to personalize and improve your Disney+

---

[3] The Second Circuit applied New York contract law in denying the defendant's motion to compel arbitration. Thus, even if New York law applies, as Defendant argues, the result of its motion to compel arbitration will be the same.

experience and to send you information about Disney+. You can change your communication preferences anytime. We may use your data as described in our Privacy Policy, including sharing it with the family of companies. By clicking "Agree & Continue," you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy."[4]

A motion to compel arbitration was denied in a similar situation, where the reference to the terms and conditions was "surrounded by a substantial amount of unrelated information." *See Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 999 F.3d 828, 830 (2d Cir. 2021). In *Soliman*, the court denied the defendant's motion to compel arbitration where the URL for the website containing the defendant's terms and conditions "buried within a fine-print paragraph with over eighty other words" that included directions to text a keyword to a code, and was "dwarfed by the surrounding colorful text and imagery." *Id*. at 835-36.

The 2019 and 2021 Subscriber Agreement hyperlinks here were "surrounded by a substantial amount of unrelated information" that only discussed data privacy, misleading a viewer into assuming that the Subscriber Agreement would discuss related topics, rather than completely different topics such as arbitration.

[4] Of course, the basis of Mr. Swartz's complaint is that these promises to protect data privacy were false.

### iii. Defendant's Cited Cases Are Distinguishable.

The cases ESPN relies on in support of its argument that the notice was reasonably conspicuous are distinguishable. Defendant in *Coulter v. Experian Information Solutions*, for instance, provided much more obvious notice. Civil Action No. 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021). In that case, defendant's website stated, "**by clicking 'Submit Secure Order': [He] accept[s] and agree[s] to [their] Terms of Use Agreement**." *Id*. This text was highlighted. *Id*.

In the present case, Defendant's website says, in exceedingly small, nondescript font, "you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." That tiny text is shown under large text prompting the viewer to put in his email with a checkbox prompt to receive promotions, and a large button saying, "AGREE & CONTINUE." Def. Exhibit A; Def. Exhibit B. The difference between the present case and *Coulter* where the important text is highlighted is stark.[5] *Id*.

[5] Moreover, the Court in Coulter highlighted that "Plaintiff's assent [was] plain from his own declaration which read, "I have not seen any amended terms of use beyond the [Terms of Use Agreement] *in which I agreed to in July 2017*." *Coulter* at *5 (emphasis in original). Mr. Swartz's declaration plainly states that he never saw or agreed to any arbitration clauses in 2017, 2019, or 2021. *See* Swartz Decl. at ¶ 4, 12, 24.

Similarly, in *Dobbs v. Health IQ Insurance Services, Inc.*, the court found that the hyperlink to the terms of use was "purposely and conspicuously set off from the remaining text in a blue, underlined font." Civil Action No. 21-5276, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022). Here in both 2019 and 2021, the hyperlink to the Subscriber Agreement was not set off, but hidden in the least conspicuous portion of the page, contained within a small gray box comprised of several sentences written in small white font, while the rest of the page includes a colorful picture of a smiling family and large text. Def. Exhibit A; Def. Exhibit B.

Another important distinction between the present case and *Dobbs* and *Coulter* is that in those cases, the plaintiffs had notice that the terms to which they were agreeing were the terms of use for the company from which they wanted services. In *Dobbs*, plaintiff accessed defendant Health IQ's website through a Facebook ad and subsequently filled out information on Health IQ's site, intending to access Health IQ's insurance sales services. *Dobbs*, 2022 WL 2974713 at *1. The terms of use hyperlinked were Health IQ's terms of use. *Id*. In *Coulter*, plaintiff accessed defendant Experian CreditWork's website and subsequently filled out information on that website, intending to access Experian CreditWork's credit monitoring service. *Coulter*, 2021 WL 735726 at *1. The terms of use hyperlinked were Experian CreditWork's terms of use. *Id*.

However, in Mr. Swartz case in both 2019 and 2021, he accessed Disney's website through Verizon and filled out certain information on Disney's website intending to access Disney+ video streaming services. But the Subscriber Agreements hyperlinked were not ESPN's. The courts in *Dobbs* and *Coulter* did not have to account for this significant factual difference and complication.

**E. Plaintiff is Entitled to Limited Discovery Over the Validity of Any Arbitration Agreement**

As noted above, the existence of a binding arbitration agreement is an issue of fact to be decided under Rule 56. *Holdbrook, supra.* When a plaintiff has shown additional facts sufficient to place the arbitration clause in issue, then the parties are entitled to discovery on the question of arbitrability before the court entertains further briefing on the question and evaluates the motion. *Horton v. FedChoice Federal Credit Union*, 688 Fed. Appx. 153, 157 (3d Cir. 2017) ("Without the benefit of a developed factual record, we cannot assess whether the authenticity or import of the computer printouts, offered by FedChoice's own employee, are factual matters beyond reasonable dispute."); *Holbrow*, 2021 WL 5235278 at *3 (concluding that the court was unable to review the merits of defendant's motion to dismiss or alternatively, to compel arbitration, without limited discovery into the issue of whether an agreement to arbitrate existed).

In support of his position, Mr. Swartz provides a detailed description of what he did or did not see, recall, or understand. With his Declaration Mr. Swartz has, at

a minimum, "responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Id.* at *2 (citing *Guidotti*, 716 F.3d at 776.

Mr. Swartz's Declaration provides facts that raise numerous questions about: the circumstances, substance and enforceability of the purported agreement to arbitrate; whether Mr. Swartz was provided sufficient notice; whether the Subscriber Agreement was reasonably conspicuous; whether Mr. Swartz actually proceeded through the online steps in the manner that Defendant alleges he did; and the authenticity of the printouts Defendant submitted. Thus, as factual issues exist, this Court should order limited discovery on arbitrability. *Roman v. Prince Telecom, LLC*, No. 1:21-CV-693, 2022 WL 683031, at *2 (M.D. Pa. Jan. 26, 2022) (finding limited discovery was warranted to decide validity and enforceability of defendants' arbitration agreements as the plaintiffs presented additional facts placing the validity and enforceability of the arbitration agreements in question); *McDaid v. Avant, LLC*, No. 2:21-CV-01135-RJC, 2021 WL 9803613, at *3 (W.D. Pa. Oct. 26, 2021) (finding that the complaint was unclear regarding the agreement to arbitrate as the complaint "fail[ed] to assert any allegations suggesting that the state claims may be subject to an enforceable arbitration agreement," and therefore ordering limited discovery on the "threshold issue of the existence of a valid arbitration agreement"); and *Putt v. TripAdvisor Inc.*, Civ. No. 20-3836, 2021 WL 242470, at *7 (E.D. Pa.

Jan. 25, 2021) (holding that the court "cannot resolve the enforceability of the Agreement at this stage" because there were questions about whether the Agreements was clickwrap or browsewrap, whether it was reasonably conspicuous that plaintiff should have been on notice that she would be bound by it, and how the webpages were presented to the plaintiff).[6]

## IV. CONCLUSION

In sum, as the tiny hyperlink to the Subscriber Agreement for Disney containing the arbitration clause was not reasonably conspicuous throughout Disney's subscription process, which involved multiple steps and screens on Disney's website, Mr. Swartz had no notice of any change in agreements he made with ESPN, and any such agreements are invalid and unenforceable.

For the foregoing reasons, Mr. Swartz respectfully requests that this Court issue an order denying Defendant's motion to compel arbitration. In the alternative, Mr. Swartz respectfully requests that this Court grant him limited discovery on the issue of arbitrability and thereafter decide Defendant's motion.

[6] Attached as Exhibit 2 is the discovery Plaintiff is seeking.

Dated: January 10, 2023

Respectfully submitted,

**BY:** */s/ John A. Macoretta*

**SPECTOR ROSEMAN & KODROFF, P.C.**
John A. Macoretta
Diana J. Zinser
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
jmacoretta@srkattorneys.com
dzinser@srkattorneys.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023 a true and correct copy of the foregoing document was filed using the Court's CM/ECF System, which will serve all counsel of record.

**BY:** */s/ John A. Macoretta*
John A. Macoretta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESPN Inc.,<br><br>Defendant. | Case No.: 1:22-cv-01523<br>(Judge Christopher C. Conner) |

## LOCAL RULE 7.8(b)(2) CERTIFICATE

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Brief in Support of Plaintiff's Opposition to Motion to Compel Arbitration of 4,849 words, exclusive of the caption, Table of Contents and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: January 10, 2023

**BY:** */s/ John A. Macoretta*
John A. Macoretta