**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NATE SWARTZ, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

ESPN Inc.,

*Defendant*.

Civil Action No. 1:22-CV-01523
(Judge Christopher C. Conner)

**REPLY IN SUPPORT OF ESPN INC.'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS


ARGUMENT ..... 2

A. ESPN's Motion Is Properly Evaluated Under a Rule 12(b)(6) Standard ..... 2

B. Plaintiff Was Put On Notice That The Subscription Agreements Governed His Use Of ESPN+ ..... 7

i. The Relevant Question is Whether Plaintiff Had Reasonable Notice of the Agreements, Not the Agreements' Specific Terms. ..... 7

ii. Plaintiff was on Notice that the Subscription Agreements Would Govern his ESPN+ Subscription ..... 11

C. ESPN Provided Reasonably Conspicuous Notice of the Subscription Agreements ..... 14

i. The Cases Plaintiff Relies on Confirm the Sufficiency of ESPN's Notice. ..... 14

ii. The Caselaw Cited by ESPN Is Relevant and Supports the Sufficiency of ESPN's Notices ..... 20

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009) ....................8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................*passim*

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014) ....................3

*Coulter v. Experian Info. Sols., Inc.*,
No. 2:20-cv-01814-NIQA (E. D. Pa. Nov. 20, 2020)....................21

*Coulter v. Experian Info. Sols., Inc.*,
No. 20-1814, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021)....................21, 22, 23

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017)....................4

*Dobbs v. Health IQ Ins. Servs., Inc.*,
No. 21-5276, 2022 WL 2974713 (E.D. Pa. July 27, 2022)....................21, 22, 23

*Engen v. Grocery Delivery E-Servs. USA Inc.*,
453 F. Supp. 3d 1231 (D. Minn. 2020)....................11

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)....................9, 11

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ....................4, 5, 6

*HealthPlanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020)....................6, 7, 9

*Hewitt v. Rose Grp.*,
No. 15-5992, 2016 WL 2893350 (E.D. Pa. Mar. 21, 2016)....................4

*Joaquin v. Directv Grp. Holdings, Inc.*,
No. 15-8194 (MAS) (DEA), 2016 WL 4547150 (D.N.J. Aug. 30, 2016) ....................6

*Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*,
955 F. Supp. 2d 317 (D.N.J. 2013) ....................16

*Matthews v. Gucci*,
No. 21-434-KSM, 2022 WL 462406 (E.D. Pa. Feb. 15, 2022) ....................5

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................7, 9, 17, 18

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
460 F. Supp. 3d 93 (D. Mass. 2020) ....................11

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ....................7

*Optimum Constr., Inc. v. Harbor Bus. Compliance Corp.*,
No. MJM-21-2432, 2022 WL 4608170 (D. Md. Sept. 30, 2022) ....................11

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
636 F.2d 51 (3d Cir. 1980) ....................5

*Petri v. Erie Cnty. Child. & Youth*,
No. 1:19-cv-243, 2021 WL 2291812 (W.D. Pa. June 4, 2021), *aff'd*, Nos. 21-1264 & 21-2145, 2021 WL 5822397 (3d Cir. Dec. 7, 2021) ....................16

*Saechow v. Phila. Acad. Health Sys., LLC*,
No. 19-2075, 2021 WL 1210008 (E.D. Pa. Mar. 31, 2021) ....................4

*Schwartz v. Comcast Corp.*,
256 F. App'x 515 (3d Cir. 2007) ....................9

*Silfee v. Automatic Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) ....................6

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) ....................20

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ....................17, 18, 19

**Statutes**

18 U.S.C.A. § 2710(a)(1)....................3

Federal Arbitration Act ....................4

Video Protection Act, 18 U.S.C.A. § 2710....................2, 3, 4

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6)....................2, 4, 6

Fed. R. Civ. P. Rule 56 ....................2, 4, 5

In his declaration appended to his Opposition, Plaintiff does not dispute that (1) he twice enrolled in Disney Streaming services through the Subscription Activation Process described in the declaration of Doron Gura, Director of Product Management for Disney Streaming Services, LLC; (2) he twice assented to the Subscription Agreements when activating his Disney Streaming subscriptions; and (3) he would not have been able to access his Disney Streaming subscriptions had he not assented to the Subscription Agreements. Declaration of Nate Swartz ("Swartz Decl.") ¶¶ 5, 17; *see also* ECF No. 10-1, Declaration of Doron Gura in Support of ESPN's Motion to Compel Arbitration and Stay Litigation ("Gura Decl."), ¶¶ 8-9, 12-13. These concessions should end the analysis. Instead, Plaintiff attempts to rely on his lack of memory of the sign-up process for his Disney Streaming subscriptions to argue that the notices ESPN provided regarding arbitration were not "reasonably conspicuous." *See* ECF No. 21, Brief in Opposition to ESPN's Motion to Compel Arbitration and Stay this Action ("Opp'n"), at 7-19. The law does not support him. Moreover, the cases upon which he relies only confirm the sufficiency of ESPN's notices. ESPN's Motion to Compel Arbitration should be granted.

# ARGUMENT

## A. ESPN's Motion Is Properly Evaluated Under a Rule 12(b)(6) Standard

Plaintiff's insistence that the Rule 56 standard applies to ESPN's Motion to Compel Arbitration is wrong for two main reasons: Plaintiff directly relies upon his 2020 ESPN+ subscription to try to make out his Video Protection Act, 18 U.S.C.A. § 2710 (West 2013) ("VPPA") claim, necessarily placing at issue the Disney+ and ESPN+ Subscriber Agreement ("Subscription Agreement" or "Agreement") governing his alleged subscription on the "face of the complaint," *see* Opp'n. at 5, and Plaintiff fails to identify ***any facts*** he disputes regarding his assent to the arbitration agreements.

*First*, in the Complaint, Plaintiff repeatedly alleges that he is an ESPN+ subscriber, *see* Compl. ¶¶ 12, 56-57, 62, and specifically notes that, sometime around 2020, he "began accessing and paying for his ESPN+ subscription through his Verizon internet plan." *Id.* ¶ 57. A user ***could not have enrolled in nor accessed*** their Disney+ or Disney Bundle subscription through a Verizon promotion without completing the Subscription Activation Process and assenting to the relevant Subscription Agreements. Gura Decl. ¶¶ 8-9, 12-13. Plaintiff does not dispute the accuracy of Mr. Gura's description of the Disney+ and Disney Bundle Subscription Activation Processes, nor does Plaintiff allege that he accessed ESPN+ through any other mechanism. Instead, he confirms that he enrolled in Disney Streaming

subscriptions through Verizon promotions, Swartz Decl. ¶¶ 5, 17, and merely proffers that he does not recall the details of completing the subscription process, *id.* ¶¶ 6-14, 18-27.

Plaintiff's acknowledgment of his access to ESPN via his Verizon promotion defeats any argument he may now make that he did not "allege any facts about the issue of arbitration in his Complaint," or that the contract did not appear on the face of his Complaint. *See* Opp'n at 6. It is blackletter law that contracts "not appended to the Complaint" but that "are integral to, and referenced in, the Complaint" qualify as being "apparent on the face of the Complaint." *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) ("Those contracts, though not appended to the Complaint, are integral to, and referenced in, the Complaint. Because the arbitration clause at issue ***appears in a contract relied upon in the Complaint***, we resolve the motion to compel arbitration under a motion to dismiss standard….") (emphasis added).

Moreover, because Plaintiff must allege that he is a "subscriber of [ESPN's] goods or services," 18 U.S.C.A. § 2710(a)(1), *see also* Compl. ¶ 77, in order to state a claim under the VPPA, Plaintiff naturally alleges that he enrolled in an ESPN+ subscription "through his Verizon internet plan." *Id.* ¶ 57.[1] Where the existence of

[1] ESPN disputes that Plaintiff legally qualifies as a "subscriber of goods or services from a video tape service provider" under the VPPA, 18 U.S.C.A. § 2710(a)(1), but

a contract is relied upon by Plaintiff in asserting their claim, any resulting arbitration provision implicated by the contract is necessarily "apparent on the face of the complaint," and warrants the application of the Rule 12(b)(6) standard. *See, e.g.*, *Saechow v. Phila. Acad. Health Sys., LLC*, No. 19-2075, 2021 WL 1210008, at *9 (E.D. Pa. Mar. 31, 2021) (agreement referenced in complaint which incorporates an arbitration provision is sufficient to facially establish arbitrability—applying Rule 12(b)(6) standard); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017) ("[Plaintiff] does not mention the Employment Agreement in his Complaint; however, it is clearly integral to his claims," applying Rule12(b)(6) standard). "It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016).

*Second*, Plaintiff attempts to create factual disputes where none exist, in hopes of securing the application of the Rule 56 standard (which, even if applied, does not result in a different outcome). But Plaintiff fails to "come forward with enough evidence in response to the motion to compel arbitration to place the question in issue." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774 (3d Cir.

---

Plaintiff clearly relies on his ESPN+ subscription in his Complaint in an attempt to make out his VPPA claim.

2013).[2]. Plaintiff claims he "has stated facts contrary to those in ESPN's Gura Declaration," Opp'n at 6, but he fails to identify a ***single*** one, and a comparison of the declarations proffered here makes clear there are no factual disputes. Instead, Plaintiff merely declares that he does not recall viewing or signing the Subscription Agreements. *See* Swartz Decl. ¶¶ 4, 6-15, 18-27. But the Third Circuit holds that a failure to recall an agreement alone is insufficient to warrant the application of the Rule 56 standard or to necessitate discovery into arbitrability. *Compare Matthews v. Gucci*, No. 21-434-KSM, 2022 WL 462406, at *4 (E.D. Pa. Feb. 15, 2022) ("[T]he inability of a nonmoving party to recollect whether she signed the agreement is insufficient to trigger additional discovery and the Rule 56 standard in and of itself."); *with Guidotti*, 716 F.3d at 774 ("[J]udging motion to compel arbitration under summary judgment standard where plaintiff presented '[a]n ***unequivocal denial*** that the agreement had been made, accompanied by supporting affidavits.'") (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980) (emphasis added)). *See also* ECF No. 22, Letter re: Plaintiff's Improper Discovery Requests Submitted During the Pendency of ESPN Inc.'s Motion to Compel Arbitration (ECF No. 10). "Without Plaintiff providing specific facts, or

---

[2] ESPN reincorporates its argument that New York law should govern the Subscription Agreements. ECF No. 13, Br. in Supp. of ESPN Inc.'s Mot. to Compel Arb. And Stay this Action ("Br.") at 12 n.2. However, the Court need not resolve any choice of law issues at this stage because the outcome of this motion is the same under the law of Pennsylvania or New York. *Id*.

even an unequivocal denial, to call the agreement to arbitrate into issue … discovery is [un]warranted" and the motion should be evaluated under a Rule 12(b) standard. *Joaquin v. Directv Grp. Holdings, Inc.*, No. 15-8194 (MAS) (DEA), 2016 WL 4547150, at *3 (D.N.J. Aug. 30, 2016).

Plaintiff appears to conflate his general disagreeability with the Subscription Agreement's enforceability with factual disputes. But allowing disagreeability over an agreement's enforceability to masquerade as a factual dispute "would render the Rule 12(b)(6) standard a nullity; if a party has filed a motion to ***compel*** arbitration, then the other party ***necessarily*** questioned arbitrability." *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017) (emphases added).

Because the Subscription Agreement is directly implicated and relied upon in the Complaint, and Plaintiff fails to raise "additional facts sufficient to place the agreement to arbitrate in issue," the Rule 12(b)(6) standard should be applied "without discovery's delay." *See Guidotti*, 716 F.3d at 776; *see also HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 317 (W.D. Pa. 2020) ("[Plaintiff] has not presented evidence or otherwise identified any relevant category of information outside the record requiring the Court to pierce the pleadings in order to determine whether a valid arbitration agreement exists.").[3]

[3] *See* ECF No. 22, Letter re: Plaintiff's Improper Discovery Requests Submitted During the Pendency of ESPN Inc.'s Motion to Compel Arbitration (ECF No. 10).

### B. Plaintiff Was Put On Notice That The Subscription Agreements Governed His Use Of ESPN+

Contrary to Plaintiff's assertions, the only relevant question is whether Plaintiff had adequate notice of the Subscription Agreements, not whether he actually read the Agreements' terms. *See HealthPlanCRM*, 458 F. Supp. 3d at 332 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016) ("'[A]n internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence.'")). Courts routinely analyze whether a potential party to an agreement has "reasonably conspicuous notice" of the agreement itself, and, where they do, courts find that they are bound to the agreements' terms as if they clicked on the hyperlink and reviewed the agreement. *Id.* The record here is clear that ESPN provided reasonably conspicuous notice of its Subscription Agreements and a reasonably prudent internet user would have understood that the Subscription Agreements govern ESPN's services.

#### *i. The Relevant Question is Whether Plaintiff Had Reasonable Notice of the Agreements, Not the Agreements' Specific Terms.*

Courts evaluate whether a web-based agreement to arbitrate exists based on whether the "notice of ***the agreement*** [is] 'reasonably conspicuous'" and whether there is a "manifestation of assent unambiguous as a matter of law." *HealthplanCRM*, 458 F. Supp. 3d at 331 (emphasis added) (citing *Meyer v. Uber*

*Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017)). In doing so, courts look not to a party's subjective intent, but rather to the "intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (citation omitted). In other words, "a true and actual meeting of the minds is not necessary to form a contract." *Id.* (internal citation omitted).

Plaintiff erroneously argues that the Subscription Agreement he assented to is invalid because he purportedly does not recall "receiving, viewing, or reading" the Subscription Agreements (*see* Swartz Decl. ¶¶ 15, 27), and was thus unaware that the terms of the Subscription Agreement covered ESPN's services. This does not matter. Whether or not Plaintiff read the Agreement, or paid attention to the ESPN logo prominently displayed on every page of the Subscription Activation Process, is irrelevant. The relevant question is whether the party had adequate ***notice of the agreement***, not whether they had ***knowledge of the agreement's terms***.

ESPN provided sufficiently conspicuous notice of its Subscription Agreements as described in greater detail *infra* Section C, notwithstanding Plaintiff's evident failure to recall the Agreements. Had Plaintiff clicked on the conspicuously noticed hyperlink, it would have been clear to him that the Agreement governed ESPN+. In fact, the title of the Agreements located on the top of the first

page in both documents in large font read, "**Disney+ and ESPN+ Subscriber Agreement.**" Gura Decl., Ex. C at 2, Ex. D. at 2.

The law is clear that where the offeree cannot recall reading the terms, the offeree is ***still bound*** by the agreement if a reasonably prudent user would be on inquiry notice of the terms. *See, e.g.*, *Meyer*, 868 F.3d at 74-75. Indeed, if a user has "reasonably conspicuous" notice of an agreement, and there is a "manifestation of assent unambiguous as a matter of law," then the user is under a duty imposed by law to inspect that agreement, and is bound to the agreement's terms regardless if they choose to conduct such an inspection. *HealthPlanCRM, LLC*, 458 F. Supp. 3d at 331 (internal citation omitted). A party's "failure to read a contract does not excuse a party from being bound by its terms." Br. at 12-13 (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007)).

Plaintiff's claim that he was unaware that "signing up twice for Disney Streaming services through Verizon promotion would change anything about [his] existing ESPN streaming subscription," (*see* Swartz Decl. ¶ 28), does not negate the legal sufficiency of the notice he was provided. Plaintiff's actual knowledge of the scope of the terms is not determinative because he was provided reasonably conspicuous notice of the Subscription Agreement and assented to it, he is on inquiry notice as to the terms, and he is legally assumed to have investigated the terms or otherwise accepts them as they exist. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d

229, 238 (E.D. Pa. 2007). Plaintiff cites to no facts, other than his lack of awareness, to suggest that his use of the ESPN+ services was not within the scope of the Subscription Agreement.

In failing to analyze the notice question under this well-recognized framework, Plaintiff makes a number of fundamental errors. First, Plaintiff attempts to frame the 2019 and 2020 Subscription Agreements as mere modifications of his existing ESPN Insider agreement. *See* Opp'n at 11. But the Agreements were not modifications. Both the 2019 and the 2020 Subscription Agreements were independent contracts entered between Plaintiff and both Disney+ and ESPN+, covering unique sets of services with differing terms, and with no discussion of amending or modifying a specific prior agreement. In fact, to the contrary, both Subscription Agreements explicitly state that the Agreements "supersede[] all prior or other arrangements, understandings, negotiations and discussions, whether oral or written" pertaining to both Disney+ and ESPN+. Gura Decl., Ex. C, Sec. 8(n) at 16; Ex. D, Sec. 8(n) at 16.

Second, due to this initial error, Plaintiff mistakenly relies upon categorically dissimilar cases from states not at issue in this matter. Plaintiff cites to three out-of-jurisdiction cases, two of which involved ***updates to terms of use*** that were buried

in marketing emails,[4] and a third that involved a ***browsewrap update to terms of use*** inconspicuously placed at the bottom of the website.[5] In each case, plaintiffs purportedly assented through their continued use of the service or their continued use of the website. None of these cases are analogous to Defendants' arguments here. Here, the Subscription Agreements were independent "sign-in wrap"[6] agreements (not updates to terms) that Plaintiff affirmatively assented to by clicking the "Agree & Continue" button placed just below the Disney Activation Acknowledgment. *See* Gura Decl. ¶¶ 8-9, 12-13. Plaintiff's cases analyzing the degree of notice required when updating terms of an existing agreement are therefore inapposite and irrelevant.

#### ***ii. Plaintiff was on Notice that the Subscription Agreements Would Govern his ESPN+ Subscription***

A "reasonably prudent internet user" would have been aware that the Subscription Agreements govern ESPN+. *See Feldman*, 513 F. Supp. 2d at 238.

---

[4] *Engen v. Grocery Delivery E-Servs. USA Inc.*, 453 F. Supp. 3d 1231, 1238 (D. Minn. 2020); and *Murray v. Grocery Delivery E-Servs. USA Inc.*, 460 F. Supp. 3d 93, 98 (D. Mass. 2020).

[5] *Optimum Constr., Inc. v. Harbor Bus. Compliance Corp.*, No. MJM-21-2432, 2022 WL 4608170, at *6 (D. Md. Sept. 30, 2022).

[6] "*Sign-in wrap*" agreements are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 865 (9th Cir. 2022) (Baker, J., concurrence).

Every step Plaintiff completed as part of the Subscription Activation Process when he enrolled in his Disney Bundle subscription (the operative agreement entered in 2021) made clear that ESPN+ was included as part of the subscription package and that the subscription governed his use of ESPN+. For example, when Plaintiff selected to enroll in the Disney Bundle as a part of his Verizon plan, he was shown the following screen, which explicitly states in several locations that ESPN+ is part of the subscription package:


**The Disney Bundle (Disney+, Hulu & ESPN+)**

**Included with your plan. $12.99/mo value.**

**Get the best movies, shows, and sports with Disney+, Hulu, and ESPN+.**

With The Disney Bundle, you get:
- Disney+: The best stories in the world from Disney, Pixar, Marvel, Star Wars, National Geographic, and more. All ad-free.
- Hulu (ad-supported): The largest streaming TV library of current hits, full seasons, movies, FX on Hulu, and groundbreaking Originals.
- ESPN+: Get closer to the sports you love with exclusive access to thousands of live and archive events, replays, ESPN+ originals, and the complete 30 for 30 library. Plus, premium articles and fantasy tools included with your subscription.

All three streaming on your favorite devices, at home or on the go.



Gura Decl. Ex. B, at 2. Similarly, the Disney Bundle activation webpage—which includes the Disney Activation Acknowledgement and the hyperlinked Subscription Agreement—prominently displays the ESPN+ logo alongside the Hulu and Disney+ logos.




Gura Decl. Ex. B, at 7. A reasonably prudent internet user would have been on notice that the hyperlinked Subscription Agreement included on the same webpage would necessarily bind their use of the ESPN+ service.

Moreover, Plaintiff's Complaint contradicts any allegations Plaintiff now makes about his lack of awareness of the relationship between Disney and ESPN+. *See* Compl. ¶¶ 32-33. As Plaintiff concedes, the Privacy Policy linked on ESPN's website takes a user to ***The Walt Disney Company's website***, and states that ESPN may collect "[a]ctivity information … you authorize through your account" including through "the creation of profiles under your Disney+ or Hulu account[s]." Compl. ¶ 32. The Complaint also goes on to note that ESPN "will not share your personal information outside ***The Walt Disney Family of Companies*** except in limited circumstances." Compl. ¶ 33 (emphasis added). Given this direct recognition of ESPN's and Disney's relationship and policy coverage, Plaintiff's

argument that he had no awareness that the Disney Bundle subscription could potentially implicate his use of ESPN's services rings hollow.

Simply put, Plaintiff's own allegations, and the conspicuous display of ESPN+ among the Disney Bundle services throughout the Disney Activation Process, clearly indicated that the Disney Bundle Subscription Agreement would govern Plaintiff's use of the ESPN+ service.

### C. ESPN Provided Reasonably Conspicuous Notice of the Subscription Agreements

The notice of ESPN's Subscription Agreements provided to Plaintiff is well-aligned with the "reasonably conspicuous" standards articulated by courts across the country, including those relied upon by Plaintiff. The hyperlinks to the Subscription Agreements were displayed in a clearly legible font; were offset in a contrasting blue color and underlined; were temporally and spatially proximate to the assent button; included clear prompts that "By clicking 'Agree & Continue,' you agree to our Subscriber Agreement"; and included text on the assent button stating "AGREE & CONTINUE," which explicitly gave notice as to the legal significance of the action. *See* Gura Decl., Ex. A at 5, Ex. B at 7.

#### ***i. The Cases Plaintiff Relies on Confirm the Sufficiency of ESPN's Notice.***

The Ninth Circuit's decision in *Berman v. Freedom Financial Network,* LLC, 30 F.4th 849 (9th Cir. 2022)—which Plaintiff primarily relies on—only further

confirms the sufficiency of the notices provided here. In *Berman*, the court articulated a set of design elements that are relevant in determining whether a specific notice is "reasonably conspicuous." *Id*. at 856-58. First, the notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id*. at 856. Second, if a hyperlink is used, it must be readily apparent—factors to consider include: (i) whether the font is in a contrasting color (typically blue), (ii) is in all capital letters, and (iii) whether it is underlined. *See id*. at 857. And, third, the notice must explicitly notify a user of the legal significance of the action they must take to enter into a contractual agreement. *See id*. 858.

Comparing the notices the Ninth Circuit panel found to be insufficient in *Berman* with ESPN's notices highlights their significant differences. *Compare* Gura Decl. Ex. A at 5, Ex. B at 7 *with Berman*, 30 F.4th 859, App'x A-B. [7]







The text disclosing the terms and conditions in *Berman* were in a "tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is ***barely legible to the naked eye***"; it did not use contrasting colors to "set apart" the hyperlinked terms from the surrounding text;

---

[7] A "court may take judicial notice of documents filed in other court proceedings because they are matters of public record." *Petri v. Erie Cnty. Child. & Youth*, No. 1:19-cv-243, 2021 WL 2291812, at *2 (W.D. Pa. June 4, 2021), *aff'd*, Nos. 21-1264 & 21-2145, 2021 WL 5822397 (3d Cir. Dec. 7, 2021) (citing *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 325 (D.N.J. 2013)).

and the assent button included no language to provide notice of the legal significance of the action. *Id*. at 856-58 (emphasis added). In contrast, ESPN's notices were not buried among copious amounts of text, were in a legible font size, included hyperlinked terms "set apart" from the surrounding text in blue font and underlined, and the buttons explicitly read "Agree & Continue," denoting its legal significance. Gura Decl. Ex. A at 5, Ex. B at 7.

Similarly, Plaintiff's invocation of *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019), also misses the mark. In *Starke*, the court cites to *Meyer v. Uber Tech, Inc.* in articulating a set of relevant factors to evaluate in determining whether the notice provided was "reasonably conspicuous," including: (i) whether the payment screen was uncluttered; (ii) whether the agreement was "spatially coupled" with the assent button; (iii) whether the user had to scroll on the webpage to find the notice; (iv) whether the assent button was "temporally coupled" with the hyperlink (meaning whether both elements were displayed at the same time in the transaction process); and (v) whether there was a clear prompt directing the users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms. *See id*. 291-92 (citing *Meyer*, 868 F.3d at 77-78).

A comparison between ESPN's notices, the notice in *Meyer* (which was found to be reasonably conspicuous), and the notice in *Starke* (which was found not to be reasonably conspicuous) is also illuminating.




*Meyer*




*Starke*

ESPN's notices are much more similar to the notice in *Meyer* than the notice in *Starke*. Both ESPN's notices and the *Meyer* notice were spatially and temporally proximate to the assent button, do not require scrolling, include a clear prompt directing users to read the relevant agreement, and are linked in underlined text in

contrasting colors. In contrast, the *Starke* notice required the user to scroll to find it, was buried among significant amounts of text, was not spatially proximate to the assent button, and did not provide a prompt to the user to review the relevant agreement. *Cf.* Gura Decl. Ex. A at 5, Ex. B at 7; *see also Starke*, 913 F.3d at 292-95.

Plaintiff next contends that the design of ESPN's webpage "stole the viewer's attention away" from the Subscription Agreements, which was "only exacerbated by the fact that Mr. Swartz could only have gotten to the page … after clicking through at least three prior screens." Opp'n at 14. Not only does Plaintiff cite no cases in support of the notion that the number of webpages in an enrollment flow preceding an online contract somehow impacts the notice analysis, but also common sense dictates otherwise. It is not as if Plaintiff was required to click through multiple hyperlinks buried on a website in search of a hidden user agreement that they otherwise would never see. Here, every user enrolling in a Disney Streaming service through Verizon was required to progress through the same set of webpages and could not have activated their subscription without clicking "Agree & Continue" on

the Disney activation webpage. It was unavoidable, regardless of the number of webpages in the enrollment flow.

Finally, contrary to Plaintiff's assertions, ESPN's notices are not "surrounded by a substantial amount of unrelated information." Opp'n at 16 (citing *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830-31 (2d Cir. 2021)). The Disney Activation Acknowledgement is directly related to the Subscription Agreements as it discusses the policies applicable to subscribers' use of the Disney Streaming services. Gura Decl. Ex. A at 5, Ex. B at 7. The Agreement disclosure is not "buried within" a lengthy fine print paragraph that includes unrelated instructions, as was the case in *Soliman*. Opp'n at 16 (citing 999 F.3d at 835-36). A




visual comparison shows the clear difference between ESPN's notices and the *Soliman* notice. *See Soliman*, 999 F.3d at 832.

***ii. The Caselaw Cited by ESPN Is Relevant and Supports the Sufficiency of ESPN's Notices***

Despite Plaintiff's attempts to distinguish ESPN's cases, the notices provided for ESPN's Subscription Agreements were equal to, if not greater than, the notices provided in either *Coulter v. Experian Info. Sols., Inc.*, No. 20-1814, 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021), and *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022), both of which were upheld as valid arbitration agreements.

<u>*Coulter*:</u> Plaintiff makes multiple missteps in analyzing *Coulter.* First, Plaintiff argues that *Coulter* is distinguishable because there, the relevant text, "**by clicking 'Submit Secure Order': [He] accept[s] and agree[s] to [their] Terms of Use Agreement,"** was highlighted, Opp'n at 17 (citing 2021 WL 735726, at *5). But this bolding of the text only appears in the judicial opinion and not in the actual image of the webpage. *See* Decl. of David Williams, Ex. 2, *Coulter v. Experian Info. Sols., Inc.*, No. 2:20-cv-01814-NIQA, (E. D. Pa. Nov. 20, 2020) (attached hereto as Ex. A). While the court noted that the Terms of Use were available to the Plaintiff by clicking on "the highlighted link," the "highlight" referenced was the websites' use of contrasting blue text, as is the case here. *Coulter*, 2021 WL 735726, at *5.; *see also* Gura Decl. Ex. A at 5, Ex. B at 7.

Second, Plaintiff also claims that the facts here differ from *Coulter* because in *Coulter* the court emphasized that "Plaintiff's assent [was] plain from his own declaration," which read, "I have not seen any amended terms of use beyond the

[Terms of Use Agreement] *in which I agreed to in July 2017*." Opp'n at 17 n.5 (citing *Coulter*, 2021 WL 735726, at *5). Here, Plaintiff purportedly "plainly states that he never saw or agreed to any arbitration clauses." *Id*. Notwithstanding the Opposition's characterization of Plaintiff's declaration—nowhere in his declaration does Plaintiff say that he did not agree to the arbitration clauses—the facts are actually quite similar. In both scenarios, the plaintiff denied having read the terms of the agreement, including the arbitration provision. *See Coulter*, 2021 WL 735726, at *5; Swartz Decl. ¶¶ 15, 27. And, like the plaintiff in *Coulter*, Plaintiff acknowledges that he enrolled in both Disney Streaming subscriptions, which necessarily required his assent to the Subscription Agreements. Swartz Decl. ¶¶ 5, 17; *see also* Gura Decl. ¶¶ 8-9, 12-13. In other words, Mr. Swartz ***does not dispute*** that he assented to the Subscription Agreements; he merely states that he "do[es] not recall receiving, viewing or agreeing to any Subscription Agreement." Swartz Decl. ¶¶ 4, 15, 27. That is not enough.

<u>*Dobbs*:</u> Similar to Plaintiff's misunderstanding of *Coulter*'s notice, Plaintiff apparently failed to examine the notice in *Dobbs*. Plaintiff argues that the hyperlinked terms of use in *Dobbs* was "purposely and conspicuously set off from the remaining text in a blue, underlined font," whereas here, "the Subscriber Agreement was not set off, but hidden in the least conspicuous portion of the page … written in small white font." Opp'n at 18 (citing *Dobbs*, 2022 WL 2974713, at *4).

However, a visual comparison of the notices confirms that ESPN's notices are similarly positioned on the webpage as in *Dobbs*, and are in a font that is at least as conspicuous and legible. *Compare* Gura Decl. Ex. A at 5, Ex. B at 7, *with Dobbs*, Decl. of Raj Vavilala, 5:21-cv-05276-JLS, (E.D. Pa. Dec. 21, 2022), at 2 (attached hereto as Ex. B). In both examples, the relevant agreement hyperlink is "set off from the remaining text in a blue, underlined font." *Dobbs*, 2022 WL 2974713, at *4.

Finally, Plaintiff argues that another important distinction between the instant case and *Dobbs* and *Coulter* is that, in those cases, "the plaintiffs had notice that the terms to which they were agreeing were the terms of use for the company from which they wanted services." Opp'n. at 18. As discussed in detail in Section B(i), however, the relevant inquiry is whether Plaintiff had notice of the Subscription Agreement itself, not its specific terms, and, as discussed in Section B(ii), Plaintiff was on notice that the Disney Bundle Subscription Agreement would govern his use of ESPN+. While those questions may not have been specifically presented in *Dobbs* and *Coulter*, the courts' analysis of what is "reasonably sufficient" notice is still highly relevant and further supports the sufficiency of the notices provided here.

## **CONCLUSION**

For the foregoing reasons, ESPN respectfully requests that the Court issue an order granting the Motion, compelling arbitration, and staying this action pending the completion of individual arbitration proceedings.

Dated: January 24, 2023

Respectfully submitted,

By: /s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA ID # 322093)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Allison M. Holt Ryan (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
allison.holt-ryan@hoganlovells.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 24, 2023, a true and correct copy of the foregoing document was filed using the Court's CM/ECF System, which will serve all counsel of record.

Dated: January 24, 2023 By: /s/ *Jasmeet K. Ahuja*

**CERTIFICATE OF CONCURRENCE**

I hereby certify that pursuant to Local Rule 7.1, counsel for movants sought concurrence from the parties. Plaintiff's counsel did not concur.

Dated: January 24, 2023 By: /s/ *Jasmeet K. Ahuja*

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br>*Plaintiff*,<br>v.<br>ESPN Inc.,<br>*Defendant*. | Civil Action No. 1:22-CV-01523<br>(Judge Christopher C. Conner) |

**LOCAL RULE 7.8(b)(2) CERTIFICATE**

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Reply in Support of Defendant's Motion to Compel Arbitration and Stay this Action consists of 4841 words, exclusive of the caption, Table of Contents and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: January 24, 2023 By: /s/ *Jasmeet K. Ahuja*