**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ESPN Inc.,<br><br>*Defendant*. | Civil Action No. 1:22-cv-01523<br>(Hon. Karoline Mehalchick) |

**BRIEF IN SUPPORT OF ESPN INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .....1

FACTUAL BACKGROUND .....3

A. ESPN's Services .....3

B. Plaintiff's ESPN+ Subscriptions .....3

C. Plaintiff Agreed to the Subscriber Agreement at Least Three Times .....4

D. The Subscriber Agreement Includes a Prominent Binding Arbitration and Class Action Waiver Provision .....8

LEGAL STANDARD .....9

ARGUMENT .....11

A. Plaintiff Entered Into a Valid and Enforceable Arbitration Agreement With ESPN .....13

i. Plaintiff Entered Into a Valid Clickwrap Agreement .....13

ii. Plaintiff Received Additional Notice of the Arbitration Agreement Through the 2022 Update Email .....19

iii. Plaintiff Continues to Use Disney Bundle Services After ESPN Filed Its Initial Motion to Compel Arbitration .....21

B. The Parties' Agreement Grants the Arbitrator Exclusive Authority to Decide Whether the Dispute Falls Within the Scope of the Arbitration Provision. .....22

C. If the Court Assesses Arbitrability, Plaintiff's Claims are Subject to Binding Arbitration on an Individual Basis .....24

CONCLUSION .....25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................9, 24

*Banks v. Barclays Bank Credit Servs.*,
2018 WL 6576414 (M.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, 2018 WL 6567710 (M.D. Pa. Dec. 13, 2018)....................24

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................14, 15, 17

*Black v. JP Morgan Chase & Co.*,
2011 WL 3940236 (W.D. Pa. Aug. 25, 2011)....................24

*Bollinger v. Cent. Pa. Quarry Stripping & Constr. Co.*,
425 Pa. 430, 229 A.2d 741 (1967)....................12

*Coulter v. Experian Information Solutions, Inc.*,
2021 WL 735726 (E.D. Pa. Feb. 25, 2021)....................18, 25

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................10

*Defillipis v. Dell Fin. Servs.*,
2014 WL 4198015 (M.D. Pa. Aug. 22, 2014)....................13

*Defillipis v. Dell Fin. Servs.*,
2016 WL 394003 (M.D. Pa. Jan. 29, 2016)....................14

*Dobbs v. Health IQ Ins. Servs., Inc.*,
2022 WL 2974713 (E.D. Pa. July 27, 2022)....................14, 16, 19

*Eisenberry v. Shaw Bros.*,
421 F.App'x 239 (3d Cir. 2011)....................10

*Hansen v. Ticketmaster Ent., Inc.*,
2020 WL 7319358 (N.D. Cal. Dec. 11, 2020)....................17

**TABLE OF AUTHORITIES**

**Page(s)**

*HealthPlanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020)....................13, 22

*Heller v. Rasier, LLC*,
2020 WL 413243 (C.D. Cal. Jan. 7, 2020)....................19

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)....................22

*Hine v. LendingClub Corp.*,
2023 WL 8113234 (W.D. Pa. Nov. 22, 2023)....................*passim*

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009)....................10, 11

*Liptak v. Accelerated Inventory Mgmt., LLC*,
2021 WL 650514 (W.D. Pa. Feb. 19, 2021)....................14

*Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*,
2013 WL 6185604 (M.D. Pa. Nov. 25, 2013)....................24

*Mayer v. Verizon N.J., Inc.*,
2014 WL 12789832 (D.N.J. May 6, 2014)....................19

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................17

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....................18

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612 (2d Cir. 2020)....................22

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................23

*Richardson v. Coverall N. Am., Inc.*,
811 F. App'x 100 (3d Cir. 2020), *cert. denied*, 141 U.S. 1685 (2021)....................23

*In re Ring LLC Priv. Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021)....................22

# TABLE OF AUTHORITIES

**Page(s)**

*Sadlock v. Walt Disney Company*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ....................20, 21

*Schwartz v. Comcast Corp.*,
256 F. App'x 515 (3d Cir. 2007) ....................12

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
999 F.3d 828 (2d Cir. 2021) ....................18

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ....................15

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d Cir. 2005) ....................10

*West v. Uber Techs.*,
2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ....................20

**Statutes**

9 U.S.C. §§ 1–16 ....................1, 12

9 U.S.C. § 2 ....................9

9 U.S.C. § 4 ....................10

**Other Authorities**

JAMS Rule 8(b) ....................23

Defendant ESPN Inc. ("ESPN") submits this memorandum of law in support of its Renewed Motion to Compel Arbitration and Stay This Action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Based on Plaintiff's prior arguments, the discovery undertaken, and for the reasons set forth below, the Court should order Plaintiff's claims to individual arbitration and stay this litigation pending the conclusion of individual arbitration proceedings.

## INTRODUCTION

Plaintiff Nate Swartz voluntarily agreed to arbitrate "any dispute" he had with ESPN on an individual rather than on a classwide basis, and the limited discovery ordered by the Court has only confirmed that fact. *See* Order Denying Defendant's Motion to Compel ("Order"), ECF No. 29, at 2-3. Plaintiff assented to the Disney+ and ESPN+ Subscriber Agreement ("Subscriber Agreement"), and the arbitration and class action waiver provisions therein ("Arbitration Provision"), at ***least thrice***: *first*, on January 3, 2021, when he enrolled in and activated his Disney Bundle subscription, which includes ESPN+; *second*, by continuing to use his Disney Bundle services after receiving a September 28, 2022 email ("2022 Update Email") notifying him of impending updates to the Subscriber Agreement, including its Arbitration Provision; and *third*, by continuing to use his Disney Bundle services after learning of the Subscriber Agreement through ESPN's November 28, 2022 Motion to Compel Arbitration ("Initial Motion to Compel Arbitration").

The Subscriber Agreement at issue—which applies to Plaintiff's Disney+, ESPN+, and Hulu subscriptions—provides clear and conspicuous notice of the Arbitration Provision. This Provision requires that any dispute, action, or other controversy between Plaintiff and ESPN must be submitted to binding arbitration. Indeed, courts nationwide—including those within the Third Circuit—routinely enforce online arbitration agreements similar to the one here. And any argument from Plaintiff that he does not recall receiving, viewing, or agreeing to the Subscriber Agreement is legally irrelevant. *Hine v. LendingClub Corp.*, 2023 WL 8113234, at *7 (W.D. Pa. Nov. 22, 2023) (rejecting plaintiff's argument that "she [did] not remember" accepting the online agreement as a valid defense where the service was contingent on her electronic assent).

Discovery confirmed that Plaintiff (i) enrolled in a Disney Bundle subscription on January 3, 2021, through a Verizon promotion (*see* Statement of Undisputed Material Facts ("SUMF") ¶ 7); (ii) could not have activated that subscription or accessed ESPN+ services without completing the subscription enrollment and activation process available through Verizon in January 2021 ("Subscription Activation Process") (*see* SUMF ¶ 10); (iii) was aware that the Disney Bundle included ESPN+ at the time he enrolled (*see* SUMF ¶ 8); (iv) received Disney's 2022 Email Update (*see* SUMF ¶ 23); and (v) continues to use his subscription even today (*see* SUMF ¶ 25-26). As such, any doubt regarding the

enforceability of the Subscriber Agreement Plaintiff entered into has been resolved, and the Court should grant ESPN's motion.

## FACTUAL BACKGROUND

### A. ESPN's Services

ESPN, an indirect subsidiary of The Walt Disney Company, is an entertainment and sports programming company that offers a subscription service titled ESPN+, which includes exclusive articles and streaming content, including live sports. SUMF ¶¶ 1-2. Disney Streaming, LLC ("Disney Streaming"), an indirect subsidiary of The Walt Disney Company, provides a combined subscription package titled the Disney Bundle, which includes Disney+, ESPN+, and Hulu. *Id.* ¶ 3.

### B. Plaintiff's ESPN+ Subscriptions

Disney Streaming business records demonstrate that Plaintiff previously maintained an ESPN+ account using the email address natemswartz@hotmail.com, for the periods (i) July 27, 2019 through August 30, 2020; and (ii) September 1, 2020 through November 30, 2020. *Id.* ¶ 5. Plaintiff's previous ESPN+ subscription ended on December 1, 2020—confirmed by a November 3, 2020 email Plaintiff received at his natemswartz@hotmail.com email address from ESPN+, which notified him that his subscription to ESPN+ had been "cancelled," and that his access to ESPN+ connected to his natemswartz@hotmail.com email would continue only "until the

end of [the] current billing period." *Id.* ¶ 6. As a result, Plaintiff ***did not*** have access to ESPN+ from December 1, 2020 until January 3, 2021. *Id.* ¶¶ 6-7.

On January 3, 2021, Plaintiff enrolled in and activated a Disney Bundle subscription—this time using a different email address: natemswartz@gmail.com. *Id.* ¶ 7. Because Plaintiff had no ESPN+ subscription when he enrolled in his January 2021 Disney Bundle subscription with his natemswartz@gmail.com email address, and assented to the accompanying Subscriber Agreement, that subscription and its accompanying Agreement governs Plaintiff's ESPN+ related claims.

**C. Plaintiff Agreed to the Subscriber Agreement at Least Three Times**

Plaintiff's January 3, 2021 Disney Bundle subscription was created through a Verizon promotion. SUMF ¶ 8. Plaintiff understood at the time of his enrollment that the Disney Bundle encompassed the ESPN+, Disney+, and Hulu streaming services. *Id.* Plaintiff recalls signing up for Disney Bundle through a Verizon promotion but asserts that he cannot recall the steps he took to do so. *Id.* ¶ 9. However, it is undisputed that there is only one process by which a customer could enroll in and activate the Verizon offering of the Disney Bundle in January 2021 (through the "Subscription Activation Process"), and Plaintiff could not have activated his Disney Bundle promotional subscription, without completing that process. *Id.* ¶ 10.

In the first step of the Subscription Activation Process, Verizon customers, including Plaintiff, were directed to the Disney Bundle webpage on Verizon's website, and were given the opportunity to select the Disney Bundle as an add-on to their Verizon plan for a 12-month promotional period by clicking on the black button labelled "Get it now." *Id.* ¶ 11.




After selecting "Get it now", Verizon customers, including Plaintiff, were provided a redemption link that, when clicked, would take the customer to the Disney Bundle activation webpage. *Id.* ¶ 12.




The activation webpage required the customer to enter their email address and included a large blue button with white font that states "AGREE & CONTINUE." *Id* ¶ 13. Immediately above the "AGREE & CONTINUE" assent button were four sentences of text describing the terms to which customers must acknowledge and agree before activating their Disney Bundle subscription (the "Activation Acknowledgment"). *Id.* The Activation Acknowledgment stated, in part, "By clicking 'Agree & Continue,' you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." *Id.* Both the terms "Subscriber Agreement" and "Privacy Policy" were underlined and in blue font, offset from the surrounding white text, to indicate that they were clickable hyperlinks. *Id.* Each

led, respectively, to the Subscriber Agreement and the Privacy Policy. *Id.* Plaintiff could not have enrolled in the Disney Bundle in January 2021—including enrolling in and activating his ESPN+ subscription—without first assenting to the Subscriber Agreement. *Id.* ¶ 14.

Later, on September 28, 2022,[1] Plaintiff received the 2022 Update Email from Disney at his natemswartz@gmail.com email account notifying him of impending updates to the Subscriber Agreement, effective November 3, 2022, including updates to the Arbitration Provision therein. *Id.* ¶ 23.

The subject line and body header of the email stated "We're updating our Subscriber Agreement," and specifically highlighted four key changes to the Subscriber Agreement, including updates to the Arbitration Provision "to be more specific about the procedures for resolving any disputes relating to your subscription and our services." *Id.* The 2022 Update Email also noted the new terms would become effective on November 3, 2022, and "the prior version of our Subscriber Agreement will apply until then[.]" *Id.* The then-effective Subscriber Agreement was hyperlinked in the underlined "prior version" text. *Id.*

Since November 28, 2022, when ESPN filed its nitial Motion to Compel Arbitration, Plaintiff has continued to pay monthly subscription fees for the Disney

---

[1] On September 29, 2022, the day after Plaintiff received the 2022 Update Email, Plaintiff filed the Complaint in this Action. SUMF ¶ 24.

Bundle subscription associated with his natemswartz@gmail.com email address, has continued to stream videos through ESPN+, and has accessed ESPN+ exclusive content, as recently as December 2023. *See id*. ¶¶ 22, 26.

### D. The Subscriber Agreement Includes a Prominent Binding Arbitration and Class Action Waiver Provision

The very first page of the Subscriber Agreement to which Plaintiff assented stated, "THIS AGREEMENT WILL GOVERN YOUR USE OF THE DISNEY+ AND ESPN+ SERVICES." SUMF ¶ 16.

The Arbitration Provision contained therein required that "all disputes" be resolved through binding arbitration or small claims court, and be resolved on an individual rather than classwide basis. *Id.* ¶¶ 17-18. Conspicuous notice of the Arbitration Provision was prominently featured on the first page of the Subscriber Agreement in all capital letters in bold font, stating:

> **ANY DISPUTE BETWEEN YOU AND US, EXCEPT FOR SMALL CLAIMS, IS SUBJECT TO A CLASS ACTION WAIVER AND MUST BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION. PLEASE READ THE ARBITRATION PROVISION IN THIS AGREEMENT AS IT AFFECTS YOUR RIGHTS UNDER THIS CONTRACT.**

*Id*. ¶ 18.

Section seven of the Subscriber Agreement, titled "Binding Arbitration and Class Action Waiver," further detailed the terms of the Arbitration Provision. *Id*. "Dispute" was defined broadly in the Subscriber Agreement to include "any dispute,

action, or other controversy, whether based on past, present, or future events," between the customer and Disney+ and ESPN+ "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." *Id.* ¶ 19. The Arbitration Provision also explicitly granted the arbitrator with exclusive authority to determine the scope of the Provision. *Id.* ¶ 20. ("You . . . empower the arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms . . . ***including the arbitrability of any dispute*** . . . .") (emphasis added).

Finally, the Arbitration Provision specified that proceedings will be administered by JAMS pursuant to the JAMS Streamlined Arbitration Rules & Procedures. *Id.* ¶ 21.

## LEGAL STANDARD

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When a valid and enforceable arbitration provision exists, courts "shall make an order directing the parties to proceed to arbitration in accordance with the terms

of the agreement," 9 U.S.C. § 4, and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id*. § 3. That is all that we ask the Court to do here. As the Third Circuit has made clear, arbitration shall be compelled when (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement.[2] *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Given that the parties have engaged in discovery on the issue of arbitrability, ESPN's Renewed Motion should be evaluated under a summary judgment standard. *See* Order at 3. Under that standard, the Court shall compel arbitration where there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (citation omitted). Although the Court should "draw all reasonable inferences in favor of the nonmoving party," *Eisenberry v. Shaw Bros.*, 421 F.App'x 239, 241 (3d Cir. 2011), the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth ***specific facts*** showing that there is a

[2] While the Subscriber Agreement contains a clear choice-of-law provision providing for New York law to govern Plaintiff's claims, as described in ESPN's Initial Motion to Compel Arbitration (ECF No. 13, at 12 n.2), the Court need not resolve any choice-of-law issues because the outcome of this Motion is the same under the laws of Pennsylvania or New York: an agreement containing an arbitration clause exists between Mr. Swartz and ESPN. *See also* Order at 1-3 (applying Third Circuit law without reaching a choice-of-law determination).

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added) (citation omitted). "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citation omitted).

## ARGUMENT

Plaintiff voluntarily entered into a valid and enforceable agreement to arbitrate, by which he expressly agreed (i) to pursue his claims with ESPN on an individual basis through arbitration rather than in court or on a classwide basis; and (ii) that an arbitrator, rather than a court, would address the scope and enforceability of the arbitration provision.

Although Plaintiff previously asserted that "[a]t no point did [he] understand that joining Disney services would change his existing ESPN subscription" and that he, therefore, did not have notice that the Subscriber Agreement included his use of ESPN, *see* Plaintiff's Opp'n, ECF No. 21 at 8 (citing Decl. of Nate Swartz in Support of Plaintiff's Opp'n ("Swartz Decl."), ECF No. 21-1, ¶ 28), discovery has shown otherwise. *First*, Plaintiff did not have a ESPN+ subscription in January 2021 when he enrolled in the Disney Bundle. *See* SUMF ¶¶ 5-6. *Second*, Plaintiff himself readily acknowledged in his deposition that "[w]hen [he] signed up for the bundle [his] understanding was that [he] would be able to access the Hulu content, the Disney content, [and] ***the ESPN content***[.]" *Id.* ¶ 8. Accordingly, Plaintiff can no

longer claim ignorance and contend that he did not know that assenting to the Disney Bundle Subscriber Agreement would govern the use of his newly activated ESPN+ subscription.

Plaintiff may protest that he did not "recall seeing the word 'arbitrate' or any discussion of arbitration" when enrolling, *see id.* ¶ 15, but a party's "failure to read a contract does not excuse a party from being bound by its terms." *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007); *see also Bollinger v. Cent. Pa. Quarry Stripping & Constr. Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Hine*, 2023 WL 8113234, at *7 (rejecting plaintiff's defense that "she [did] not remember" accepting the online agreement).

Therefore, the questions before this Court are whether (1) the Subscription Activation Process provided Plaintiff with reasonably conspicuous notice of the Subscriber Agreement; (2) Plaintiff assented to the Subscriber Agreement; and (3) this dispute falls within the scope of the arbitration provision therein. The answer to all three is yes. This Court should therefore order Plaintiff to submit each of his claims to arbitration on an individual basis pursuant to the FAA, 9 U.S.C. §§ 1–16.

### A. Plaintiff Entered Into a Valid and Enforceable Arbitration Agreement With ESPN

Plaintiff entered into a valid and enforceable agreement to arbitrate any dispute with ESPN when he (1) assented to the Subscriber Agreement when enrolling in and activating his Disney Bundle subscription on January 3, 2021; (2) continued to use the Disney Bundle services after receiving the 2022 Update Email; and (3) continued to use his Disney Bundle services after learning of the Subscriber Agreement through ESPN's Initial Motion to Compel Arbitration. *See* SUMF ¶¶ 10-14, 23, 26. Because Plaintiff manifested assent to the Subscriber Agreement at least three times, his claims are subject to arbitration.

#### *i. Plaintiff Entered Into a Valid Clickwrap Agreement*

Plaintiff was provided reasonable notice of and assented to the Subscriber Agreement and the Arbitration Provision therein. Plaintiff's assent to the Subscriber Agreement through his online click ("clickwrap agreement") is enforceable because Plaintiff had "reasonable notice of and manifested assent to the clickwrap agreement." *Defillipis v. Dell Fin. Servs.*, 2014 WL 4198015, at *6 (M.D. Pa. Aug. 22, 2014) (citation omitted). "Clickwrap agreements are increasingly common and have routinely been upheld" where, as here, a plaintiff manifests assent after receiving reasonable notice of the terms. *Id*. (cleaned up); *see also HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 330-31 (W.D. Pa. 2020) (enforcing clickwrap agreement).

It does not matter whether a consumer actually reads the agreement: "[f]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract." *Defillipis v. Dell Fin. Servs.*, 2016 WL 394003, at *10 (M.D. Pa. Jan. 29, 2016) (citation omitted). Indeed, "courts have generally held that parties are presumed to have read the agreements that they sign," even where the plaintiff alleges "that he does not remember reading the clickwrap agreement or assenting to arbitration." *Liptak v. Accelerated Inventory Mgmt., LLC*, 2021 WL 650514, at *2 (W.D. Pa. Feb. 19, 2021).

Courts consider the following factors when evaluating the sufficiency of a clickwrap agreement's notice:

(1) whether the hyperlinked agreement is "conspicuously set off" from the surrounding text (*Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022) and is presented in a legible font (*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022));

(2) whether the agreement uses design elements to indicate that it is a clickable hyperlink, such as being displayed in a blue font, "the color typically used to signify the presence of a hyperlink" (*id.* at 854);

(3) whether the hyperlinked agreement is "spatially coupled" and "temporally coupled" with the assent button such that the user is

notified of the terms at the time of purchase (*Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019)) (citation omitted);

(4) whether the surrounding website design distracts from the agreement notice (*see Berman*, 30 F.4th at 857); and

(5) whether the webpage "explicitly notif[ies] a user of the legal significance of the action she must take to enter into a contractual agreement," *id.* at 858.

The Disney Bundle Subscription Activation Process satisfies ***each*** of these five factors.




SUMF ¶ 12.

***Hyperlink Visibility and Prominence.*** The Subscriber Agreement is "purposely and conspicuously set off from the remaining text in a blue, underlined font," *Dobbs*, 2022 WL 2974713, at *4, in the Activation Acknowledgment located directly above the "AGREE & CONTINUE" assent button. SUMF ¶ 13. The

Activation Acknowledgment is also displayed in a legible sized font, materially similar to the surrounding text, and is offset in white against the surrounding dark background. *Compare Hansen v. Ticketmaster Ent., Inc.*, 2020 WL 7319358, at *4 (N.D. Cal. Dec. 11, 2020) (finding conspicuous notice where text was "not markedly smaller than the other text" and was in "sufficient contrast to the background") *with Berman*, 30 F.4th at 856-57 (inconspicuous notice where text was displayed in "tiny gray font considerably smaller than the font used in the surrounding website elements" that was "barely legible to the naked eye.").

***Notice Proximity & Surrounding Website Design.*** The Subscriber Agreement notice is also both temporally and spatially proximate to the "AGREE & CONTINUE" assent button. The Activation Acknowledgment notice described to Plaintiff that he was agreeing to the Subscriber Agreement ***before*** he completed the Subscription Activation Process and before he could access any ESPN+ content. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("[T]emporal coupling of the terms with the registration button 'indicate[d] to the consumer that he or she is . . . employing such services subject to additional terms and conditions that may one day affect him or her.'") (citation omitted). The Activation Acknowledgment and the hyperlinked Subscriber Agreement are located directly above the "AGREE & CONTINUE" assent button, without any need for Plaintiff to scroll to find the agreement hyperlink. *Compare Meyer*, 868 F.3d at 78 ("[T]he user does not need to

scroll beyond what is immediately visible to find notice of the Terms of Service") *with Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (inconspicuous notice where "link to a website's terms of use is buried at the bottom of the page."). Additionally, far from being "surrounded by a substantial amount of unrelated information," *see, e.g.*, *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830–31 (2d Cir. 2021), the webpage here contains only three primary design elements, each of which relate directly to Plaintiff's Disney Bundle subscription enrollment and activation: (i) the entry of an email address to register for Disney Bundle; (ii) a check box to indicate whether the user wants to sign up for updates and information about their Disney Bundle services; and (iii) the Activation Acknowledgment and "AGREE & CONTINUE" button. SUMF ¶¶ 12-13.

***Explicit Notice of Legal Significance.*** The Activation Acknowledgment unequivocally states, "By clicking 'Agree & Continue,' you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy." SUMF ¶ 13. The words "Subscriber Agreement" are offset in a blue font that matches the color of the assent button, which ***explicitly denotes*** that the user is assenting to the noticed terms by including the text "AGREE & CONTINUE" on the button itself. *Id.* Courts routinely enforce comparable clickwrap agreements that provide explicit notice of the legal significance of the user's clicking action. For instance, in *Coulter v. Experian Information Solutions, Inc.*, the Eastern District of Pennsylvania found that

the plaintiff was provided reasonable notice because he was advised that "[b]y clicking 'Submit Secure Order': [He] accept[s] and agree[s] to [their] Terms of Use Agreement." 2021 WL 735726, at *5 (E.D. Pa. Feb. 25, 2021); *see also Dobbs*, 2022 WL 2974713, at *4 (adequate notice where webpage stated "[b]y clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use.").

The straightforward Activation Acknowledgment located directly above the "AGREE & CONTINUE" assent button here, including the hyperlinked Subscriber Agreement in blue font against a black background, presented Plaintiff with clear and conspicuous notice that clicking the "AGREE & CONTINUE" button constituted assent to the Subscriber Agreement.

#### *ii. Plaintiff Received Additional Notice of the Arbitration Agreement Through the 2022 Update Email*

Plaintiff again manifested his assent when he continued to use Disney's services after receiving the 2022 Update Email—before he filed his Complaint—notifying him that there were updates to the Subscriber Agreement and Arbitration Provision. *See* SUMF ¶¶ 23, 26. "Courts have found that when consumers receive emails [providing sufficient notice of terms], continued use of the service or product constitutes assent to the updated terms." *Heller v. Rasier, LLC*, 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020) (citation omitted) (concluding that email notification provided sufficient notice to bind user to terms containing arbitration provision); *see also Mayer v. Verizon N.J., Inc.*, 2014 WL 12789832, at *2 (D.N.J. May 6, 2014)

(finding plaintiff was validly notified of changes to arbitration provision via email and defendant's website).

Here, the subject line and body header of the 2022 Update Email provided explicit notice of the email's legal significance, stating "We're updating our Subscriber Agreement." SUMF ¶ 23; *see also West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("[T]he subject line of the email stated that Uber had updated its Terms of Use, and the body stated that Uber had 'revised [the] arbitration agreement which explains how legal disputes are handled."). The 2022 Update Email also encouraged subscribers "to review the updated Subscriber Agreement," hyperlinked in underlined text. SUMF ¶ 23. Further, it noted that the new terms would become effective on November 3, 2022, and "the prior version of our Subscriber Agreement [would] apply until then." *Id.* The Subscriber Agreement was also hyperlinked in the underlined "prior version" text. *Id.* Since receiving the 2022 Update Email, Plaintiff continued to use the Disney Bundle services, including ESPN+. SUMF ¶ 26. Like the clickwrap agreement itself, the 2022 Update Email placed Plaintiff on notice that his Disney Bundle subscription was subject to the Subscriber Agreement.

The Northern District of California's opinion in *Sadlock v. Walt Disney Company* is particularly instructive on this point. 2023 WL 4869245, at *13 (N.D. Cal. July 31, 2023). There, the court found that the *exact same* 2022 Update Email

that Plaintiff received here—and which Plaintiff produced in discovery (SUMF ¶ 26)—provided "reasonably conspicuous notice of the Subscriber Agreement" to which the plaintiff "unambiguously manifested assent . . . by continuing to use the streaming service after he received the email[ ]." *Id.* at *13. In so finding, the court in *Sadlock* cited to the email's subject line, namely, "We're updating our Subscriber Agreement," and to the fact that the "body of the email began with . . . a large header repeating that message: 'WE'RE UPDATING OUR SUBSCRIBER AGREEMENT.'" *Id* at *12.

This Court should follow the *Sadlock* court's decision and find that the 2022 Update Email provided reasonably conspicuous notice of the Subscriber Agreement, which Plaintiff assented to through his continued use of the service.

***iii. Plaintiff Continues to Use Disney Bundle Services After ESPN Filed Its Initial Motion to Compel Arbitration***

Plaintiff unquestionably received notice of the Subscriber Agreement and the Arbitration Provision therein when ESPN filed its Initial Motion to Compel Arbitration. *See* Swartz Decl. ¶ 27. Despite receiving this notice, Plaintiff continues to stream videos, including live sports on ESPN+, and continues to pay a monthly subscription fee for Disney Bundle services. SUMF ¶ 26. In doing so, Plaintiff agreed that "any dispute, action, or other controversy, whether based on ***past***, present, or future events," between Plaintiff and ESPN, must be resolved through arbitration. *See id.* ¶ 19 (emphasis added).

Courts have held that parties are bound by a service's terms of use if they learn of the terms' existence during the pending litigation and continue to use the service. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 613-14 (2d Cir. 2020) (holding that plaintiff received notice when defendant filed a "motion in [the] litigation raising the arbitration clause as a ground for dismissal," and assented to the provision by continuing to use "[defendant's website] since [that filing]"); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) ("The Court agrees that [] Plaintiffs' continued use of the Devices after being on constructive notice of the Terms through this lawsuit constitutes assenting conduct.").

The same is true here. Plaintiff is bound to arbitrate this dispute because he continues to avail himself of ESPN's services—even ***after*** he had notice of the Arbitration Provision through ESPN's Initial Motion to Compel Arbitration. *See* SUMF ¶¶ 25-26.

### B. The Parties' Agreement Grants the Arbitrator Exclusive Authority to Decide Whether the Dispute Falls Within the Scope of the Arbitration Provision.

Any dispute as to the scope and enforceability of the Arbitration Provision are for the arbitrator to decide. Where the parties clearly delegate questions of enforceability and scope to the arbitrator, courts must enforce that delegation. *See HealthplanCRM, LLC*, 458 F. Supp. 3d at 322; *Henry Schein, Inc. v. Archer & White*

*Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("In those circumstances, a court possesses no power to decide the arbitrability issue[.]").

Here, the plain language of the Subscriber Agreement's Arbitration Provision imbues the "arbitrator with the exclusive authority to resolve any dispute relating to the interpretation, applicability or enforceability of these terms or the formation of this contract, ***including the arbitrability of any dispute***[.]" SUMF ¶ 20 (emphasis added); *see, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (enforcing a delegation provision stating the "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement").

The parties also agreed to delegate arbitrability to the arbitrator by explicitly incorporating the JAMS Rules into the Subscriber Agreement. *See* SUMF ¶ 21. The JAMS Rules provide that any "[j]urisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator." JAMS Streamlined Arbitration Rules & Procedures, Rule 8(b), available at https://www.jamsadr.com/rules-streamlined-arbitration (last visited Feb. 9, 2024). Incorporation of arbitration rules that reserve the question of arbitrability for the arbitrator "constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability]." *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020), *cert. denied*, 141 U.S. 1685 (2021) (citation omitted).

### C. If the Court Assesses Arbitrability, Plaintiff's Claims are Subject to Binding Arbitration on an Individual Basis

If the Court were to assess arbitrability of Plaintiff's claims, the FAA requires "'any doubts concerning the scope of arbitrable issues' to be 'resolved in favor of arbitration.'" *Banks v. Barclays Bank Credit Servs.*, 2018 WL 6576414, at *6 (M.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, 2018 WL 6567710 (M.D. Pa. Dec. 13, 2018) (citation omitted).

The Arbitration Provision here requires binding arbitration of "any dispute, action, or other controversy, whether based on past, present, or future events," between the customer and the Disney+ and ESPN+ businesses "concerning the Disney+ Service, ESPN+ Service, or this Agreement, whether in contract, tort, warranty, statute, regulation, or other legal or equitable basis." SUMF ¶ 19. This type of language has repeatedly been found to be "of the broadest nature" encompassing all disputes between the parties. *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, at *6 (W.D. Pa. Aug. 25, 2011); *see also AT&T Mobility LLC*, 563 U.S. at 336 (enforcing arbitration agreement governing "all" disputes); *Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*, 2013 WL 6185604, at *4 (M.D. Pa. Nov. 25, 2013) (same conclusion).

Finally, because the Arbitration Provision contains a clear class action waiver and states that any dispute must be conducted on an individual basis, *see* SUMF ¶ 18,

Plaintiff may only bring his claims against ESPN on an individual basis. *See Coulter*, 2021 WL 735726, at *5.

## CONCLUSION

For the foregoing reasons, ESPN respectfully requests that the Court issue an order granting the Motion, compelling arbitration, and staying this action pending the completion of individual arbitration proceedings.

Dated: February 9, 2024

Respectfully submitted,

By: /s/ *Jasmeet K. Ahuja*

Jasmeet K. Ahuja (PA ID # 322093)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Allison M. Holt Ryan (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
allison.holt-ryan@hoganlovells.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 9, 2024, a true and correct copy of the foregoing document and supporting documents were filed using the Court's CM/ECF System, which will serve all counsel of record.

Dated: February 9, 2024 By: /s/ *Jasmeet K. Ahuja*

# CERTIFICATE OF CONCURRENCE

I hereby certify that pursuant to Local Rule 7.1, counsel for movants sought concurrence from the parties. Plaintiff's counsel did not concur.

Dated: February 9, 2024 By: /s/ *Jasmeet K. Ahuja*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ESPN Inc.,<br><br>*Defendant*. | Civil Action No. 1:22-cv-01523<br>(Hon. Karoline Mehalchick) |

**LOCAL RULE 7.8(b)(2) CERTIFICATE**

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Brief in Support of Defendant's Renewed Motion to Compel Arbitration and Stay This Action consists of 4,999 words, exclusive of the caption, Table of Contents, and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: February 9, 2024

By: /s/ *Jasmeet K. Ahuja*