**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESPN Inc.,<br><br>Defendant. | Case No.: 1:22-cv-01523<br><br>(Hon. Karoline Mehalchik) |

**BRIEF IN SUPPORT OF PLAINTIFF NATE SWARTZ'S OPPOSITION TO**
**ESPN'S RENEWED MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................1

II. LEGAL STANDARD ....................................................................3

A. Pennsylvania Law Applies....................................................................4

III. ARGUMENT....................................................................6

A. Swartz's 2021 Activation Did Not Create a Binding Arbitration Agreement....................................................................7

B. Defendant's 2022 Email Is Not Valid Notice and Swartz Did Not Manifest Assent....................................................................16

C. Swartz's Continued Use of His ESPN+ Account Is Not Assent............21

IV. CONCLUSION....................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anand v. Heath*,
No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019) ......................17

*Banks v. Barclays Bank Credit Servs.*,
No. 1:17-CV-00096, 2018 WL 6576414 (M.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, No. 1:17-CV-96, 2018 WL 6567710 (M.D. Pa. Dec. 13, 2018)........................................................4

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...................................................7

*Berman v. Freedom Fin. Network, LLC*,
30 F. 4th 849 (9th Cir. 2022) ..........................................................13

*Checchia v. Solo Funds*,
No. 23-444, 2023 WL 3868369 (E.D. Pa. June 7, 2023) ..........................4, 7, 9

*Chilutti v. Uber Technologies, Inc.*,
300 A.3d 430 (Pa. Super. Ct. 2023)..............................................*passim*

*Clerk v. ACE Cash Exp., Inc.*,
No. 09-05117, 2010 WL 364450 (E.D. Pa. Jan. 29, 2010) ..........................5, 6

*Defillipis v Dell Fin. Servs.*,
No. 3:14-cv-00115, 2014 WL 4198015 (M.D. Pa. Aug. 22, 2014) .....................8

*Dumont Aircraft Charter LLC v. Valvano*,
No. 3:22-CV-00572, 2023 WL 3328119 (M.D. Pa. May 23, 2019)....................3

*Eisenberger v. Chesapeake Appalachia*,
No. 3:09-CV-145, LLC, 2010 WL 457139 (M.D. Pa. Feb. 4, 2010)...................4

*Gezu v. Charter Commc'ns*,
17 F.4th 547 (5th Cir. 2021) ........................................................17, 20

*Grice v. Uber Techs., Inc.*,
No. CV182995PSGGJSX, 2020 WL 497487 (C.D. Cal. Jan. 7, 2020) ....................17, 20

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ....................4

*HealthPlanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020)....................7, 8

*Hine v. LendingClub Corp.*,
No. 2:22-CV-00362-CRE, 2023 WL 8112324 (W.D. Pa. Nov. 22, 2023) ....................14

*Hoffman v. Genpact*,
No. 3:22-CV-000009, 2022 WL 4134740 (M.D. Pa. Sept. 12, 2022) ....................4

*Jackson v. Amazon.com, Inc.*,
65 F. 4th 1093 (9th Cir. 2023) ....................16

*Kaneff v. Delaware Title Loans, Inc.*,
587 F.3d 616 (3d Cir. 2009) ....................4, 5

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009) ....................3

*Meyer v. Uber Tech., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................14

*Nghiem v. Dick's Sporting Goods, Inc.*,
Case No. SACV 16-00097-CJC(DFMx), 2016 WL 9131962 (C.D. Cal. July 5, 2016)....................16

*Nicosia v. Amazon.com, Inc.*
815 F. App'x 612 (2d Cir. 2020) ....................22

*Pacanowski v. Financial*,
271 F. Supp. 3d 738 (M.D. Pa. 2017)....................3, 4

*In re Ring LLC Priv. Litig.*,
Case No. CV 19-10899-MWF, 2021 WL2621197 (C.D. Cal. June 24, 2021) ....................22

*Sadlock v. Walt Disney Company*,
Case No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ....................17, 18

*Sifuentes v. Dropbox, Inc.*,
No. 20-CV-07908-HSG, 2022 WL 2673080 (N.D. Cal. June 29, 2022), *appeal dismissed*, No. 22-16367, 2023 WL 2455684 (9th Cir. Jan. 20, 2023)....................18, 19, 20

**Other Authorities**

Restatement (Second) of Conflicts of Law § 188....................5

Bristol, CT. *ESPN Address Information,*
https://www.espn.com/espn/news/story?page=contact/usmail ....................6

Burbank, CA. *How do I contact Walt Disney Pictures and Walt Disney Studios?*, https://support.disney.com/hc/en-us/articles/360000829806-How-do-I-contact-Walt-Disney-Pictures-and-Walt-Disney-Studios- ....................6

Todd Spangler, *ESPN Insider Subscribers Being Switched to ESPN+ Streaming Service,* VARIETY, Aug. 21, 2018,
https://variety.com/2018/digital/news/espn-insider-switched-to-espn-plus-streaming-1202911642/ ....................1

## I. INTRODUCTION

Plaintiff Nate Swartz ("Swartz") submits this Memorandum in Opposition to Defendant ESPN Inc.'s (Defendant") Renewed Motion to Compel Arbitration. As detailed herein, and in Swartz's accompanying Response to Defendant ESPN Inc.'s Statement of Undisputed Material Facts and Additional Facts in Opposition to Motion to Compel Arbitration ("Plaintiff's Responsive Facts"), there is no factual or legal basis to compel Swartz to arbitrate his claims. Discovery has confirmed that Swartz never saw, agreed to, or assented to Defendant's proffered arbitration provisions. The controlling case law further confirms that Swartz never agreed to waive his rights to proceed before a jury. A detailed analysis of the activation screens Defendant relies on shows how Defendant's own process, which was not designed to give proper notice, was insufficient to bind Swartz to arbitration.

Swartz has subscribed to ESPN streaming services from 2017 through the present. Swartz had a subscription to ESPN Insider (the streaming precursor to ESPN+[1]) beginning in January 2017. Plaintiff's Responsive Facts at ¶ 43. Discovery shows that Swartz always intended to – and did – maintain access to ESPN streaming

---

[1] *See* Todd Spangler, *ESPN Insider Subscribers Being Switched to ESPN+ Streaming Service*, VARIETY, Aug. 21, 2018, *available at* https://variety.com/2018/digital/news/espn-insider-switched-to-espn-plus-streaming-1202911642/ ("ESPN Insider is going away after 20 years: The Disney-owned spots media giant is switching Insider subscribers over to ESPN+, its recently launched premium streaming service.") (last accessed Mar. 1, 2024).

services without any gap. *Id* at ¶¶ 44-45.[2] Swartz brought suit in September 2022 alleging that Defendant, by employing hidden pixel technology, captured and revealed Swartz's video viewing history to third parties, in violation of the Video Privacy Protection Act and the Pennsylvania Wiretapping and Electronic Surveillance Control Act. *See* Complaint, ECF No 1.

Defendant's response to the Complaint was to seek to move Swartz's claims to arbitration. Defendant now relies on a fine print hyperlink in the multi-step, multi-screen electronic sign-up process for a Disney bundle of products to claim Swartz agreed to abandon his right to a jury trial and agreed to arbitrate his claims. Swartz does not recall ever seeing any mention of arbitration or viewing any Subscription Agreement when he signed up for the 2021 Disney Bundle. *See* Plaintiff's Responsive Facts at ¶¶ 47-4. In fact, Defendant's corporate designee admits he did not need to view it to subscribe for the Bundle. *Id.* at 41.

Initially Swartz notes that discovery has forced Defendant to abandon half of its prior argument for arbitration: Swartz's addition of some Disney services in in 2019 simply did not include Swartz's existing ESPN subscription, and thus could not require Swartz to arbitrate his claims against ESPN. *See* Plaintiff's Responsive

[2] For reasons that are not clear, or relevant, Defendant now asserts that for a short period of time Swartz was not an ESPN subscriber. ESPN's Statement of Undisputed Material Facts ("Def's Facts") ¶ 7. This is disputed.

Facts at ¶ 42. Defendant no longer asserts the 2019 subscription as a basis to compel arbitration.

Since Defendant cannot meet its burden and establish that Swartz has waived his fundamental right to a jury trial nor agreed to submit his claims to arbitration, Defendant's Motion must be denied.

## II. LEGAL STANDARD

Arbitration is "still strictly a matter of contract, so if a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Dumont Aircraft Charter LLC v. Valvano*, No. 3:22-CV-00572, 2023 WL 3328119, at *2 (M.D. Pa. May 23, 2019) (internal citations omitted). "[B]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be express, unequivocal agreement to that effect." *Pacanowski v. Financial*, 271 F. Supp. 3d 738, 743 (M.D. Pa. 2017) (Mehalchick, M.J.). When deciding a motion to compel arbitration, a court must consider if (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

In ruling on Defendant's prior Motion to Compel arbitration the Court determined that discovery was necessary and that the Motion to Compel Arbitration should be considered under the summary judgment standard. *See* Order Denying Defendant's Motion to Compel Arbitration ("Order"), ECF No. 29, at 3.

To prevail under a summary judgment standard, Defendant bears the burden of showing no genuine dispute of material fact exists as to arbitrability. *Banks v. Barclays Bank Credit Servs.*, No. 1:17-CV-00096, 2018 WL 6576414, at *2 (M.D. Pa. Oct. 30, 2018), *report and recommendation adopted*, No. 1:17-CV-96, 2018 WL 6567710 (M.D. Pa. Dec. 13, 2018). All inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the non-movant's evidence must be taken as true. *Hoffman v. Genpact*, No. 3:22-CV-000009, 2022 WL 4134740, at *4 (M.D. Pa. Sept. 12, 2022). If the party opposing arbitration can demonstrate a genuine dispute as to the enforceability of the arbitration clause, summary judgment is not warranted, *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013); and *Eisenberger v. Chesapeake Appalachia*, No. 3:09-CV-145, LLC, 2010 WL 457139, at *2-4 (M.D. Pa. Feb. 4, 2010) (denying motion to compel arbitration under a summary judgment standard).

**A. Pennsylvania Law Applies**

State law principles of contract formation govern whether a valid agreement to arbitrate exists. *Pacanowski*, 271 F.Supp.3d at 744. To determine which state law is applicable, courts turn to the choice-of-law rules of the forum state (Pennsylvania). *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 621 (3d Cir. 2009); *Checchia v. Solo Funds,* No. 23-444, 2023 WL 3868369, *6 (E.D. Pa. June 7, 2023).

In a contract case in Pennsylvania, the law of the state specified in the contract will usually be applied unless: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflicts of Law], would be the state of the applicable law in the absence of an effective choice of law by the parties." *Kaneff*, 587 F.3d at 621-622 (3d Cir. 2009) (applying Pennsylvania law because plaintiff lived there, despite a Delaware choice-of-law clause); *see also Clerk v. ACE Cash Exp., Inc.,* No. 09-05117, 2010 WL 364450, **5-7 (E.D. Pa. Jan. 29, 2010) (applying Pennsylvania law even though arbitration agreement stated it would be governed by Delaware law because plaintiff lived there and application of Delaware law would be contrary to a fundamental policy in Pennsylvania).

Here, while New York is specified in Disney's Subscriber Agreement, New York has ***no*** substantial – ***or any*** – relationship to the parties or the transaction, and thus there is no reasonable basis to apply New York law.[3] Swartz is a resident of

[3] Defendant does not dispute that Pennsylvania law should apply. *See* Defendant's Renewed Motion to Compel Arbitration ("Def.'s Mot."), ECF No. 44 at 10, n.2.

Pennsylvania, *see* Def.'s Facts at ¶ 4; ESPN's headquarters are in Connecticut;[4] and Disney's headquarters are in California.[5] Swartz also completed the 2019 and 2021 subscription transactions in Pennsylvania; maintains his ESPN+ subscription in Pennsylvania, *see id.*; and viewed videos on ESPN+ while in Pennsylvania. In addition, neither party asserts any conflict between Pennsylvania and New York law. Accordingly, Pennsylvania law should apply to this Court's analysis.

## III. ARGUMENT

The evidence shows that Swartz never agreed to arbitrate his claims against Defendant, not in his 2021 sign-up through a Verizon promotion for Disney products that included ESPN, not by receiving an email from Disney in 2022, and not by continuing to use his ESPN account after Defendant filed a motion to compel Arbitration. Defendant's arguments rely largely on non-binding cases outside the Third Circuit, while ignoring recent Pennsylvania law protecting Pennsylvania residents' rights.

---

[4] According to ESPN's official website, the address listed for ESPN.com, ESPN Television, and ESPN Mobile Products is in Bristol, CT. *ESPN Address Information,* https://www.espn.com/espn/news/story?page=contact/usmail.

[5] According to Disney's official website, the address listed for Walt Disney Pictures and Walt Disney Studios Home Entertainment is in Burbank, CA. *How do I contact Walt Disney Pictures and Walt Disney Studios?*, https://support.disney.com/hc/en-us/articles/360000829806-How-do-I-contact-Walt-Disney-Pictures-and-Walt-Disney-Studios-

Significantly, the Pennsylvania Superior Court has upheld Pennsylvania residents' Constitutional right to a jury and rejected application of an arbitration agreement through the same type of electronic browsewrap process Defendant employed here. *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430, 449 (Pa. Super. Ct. 2023) ("constitutional right to a jury trial should be afforded the greatest protection under the courts of this Commonwealth").

**A. Swartz's 2021 Activation Did Not Create a Binding Arbitration Agreement**

Swartz did not enter into a valid arbitration agreement when he subscribed to the Disney Bundle in January 2021 because he did not have notice of and did not assent to the 2021 Subscriber Agreement, which held the arbitration provision Defendant relies on. While Defendant deems its sign-up process a valid clickwrap agreement, that does not make it so. On the contrary, the features of Defendant's activation acknowledgement page are an impermissible browsewrap and easily distinguishable from clickwrap agreements in the cases cited by Defendant.

"[T]he Court may determine that a web-based agreement to arbitrate exists where notice of the agreement was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020). A clickwrap agreement presents a user with terms and conditions and requires the user to check a box explicitly stating that they agree. *See Checchia*, 2023 WL 3868369, at *7 (collecting cases); *see also Berkson*

*v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) ("Clickwrap agreements require a user to *affirmatively click a box* on the website acknowledging awareness of an agreement to the terms of service before he or she is allowed to proceed with further utilization of the website.") (citation omitted) (emphasis added). The only box on the Disney Bundle activation acknowledgement page was an optional one allowing a user to choose to receive marketing emails; checking it was not required and, more importantly, checking it would not indicate assent to any terms.

The cases cited by Defendant involve clickwraps that are entirely different from the Disney Bundle activation acknowledgement page. In *Defillipis v Dell Fin. Servs.*, No. 3:14-cv-00115, 2014 WL 4198015 (M.D. Pa. Aug. 22, 2014), the website customer was *required* to check a box affirming 'I have read and agree to the Privacy Policy and Terms & Conditions, which contain important information." A printed copy of the agreement was also sent to all customers, clearly establishing notice. In *HealthPlanCRM, LLC v. AvMed, Inc.*, the sentence "Use of [software] constitutes acceptance of the End User License Agreement" appeared on the log-in page *every time* a user logged onto the software. *HealthPlanCRM*, 458 F. Supp. 3d at 332. By contrast, Swartz was not required to check a box affirming that he read and agreed to any terms, and there is no evidence that the activation webpage was shown more than once. In this way, the Disney Bundle activation acknowledgment page is not a pure clickwrap but rather more akin to a hybrid agreement, where a user must click

a button to continue without being presented with the contractual terms. *See Checchia*, 2023 WL3868369 at *8 (distinguishing between clickwraps, browsewraps, and "hybrids").

Regardless of how the agreement is labeled, the facts clearly show that Swartz did not have reasonable notice of the terms in Defendant's Subscriber Agreement. **First**, as Defendant's corporate designee acknowledges in her declaration, when Swartz decided to sign up for the Disney Bundle through a Verizon promotion in 2021, he had to proceed through *five* screens before even reaching the activation acknowledgement page (*See* Plaintiff's Responsive Facts at ¶¶ 30-31):







Email validation
Enter the email address you will use for your subscription to The Disney Bundle. If you already have a subscription to The Disney Bundle, or a subscription to Disney+, Hulu, or ESPN+, enter the email address you are currently using for that subscription.
Email address
johnsmith900@gmail.com
Retype email address
johnsmith900@gmail.com
By clicking 'Check email' below, you authorize Verizon to send your email address to The Walt Disney Company to check entitlement status.
Check email


The email address you have entered already has an existing subscription to one or more of the services included with this offer.
Email address
johnsmith900@gmail.com
Existing Subscription
Additional action may be required in order to complete account setup for one or more services included with this offer. Learn more [Link to Additional Details page] about how this Verizon subscription will affect your existing subscription.
Continue

verizon✓

Wireless In Home Business
Phones Plans Deals Shop Support 5G
Stores Search
Español My Verizon

Enroll Review Confirm

## Review

Just to confirm, here's what you're adding.

| | | |
|---|---|---|
| Account level | The Disney Bundle - Add | **Included with your plan. $12.99/mo value** |

Change in your monthly cost **$0/mo**

Your subscription to The Disney Bundle will begin once you accept the Terms and Conditions and click the Enroll button below.

If you change your Verizon plan to an ineligible plan, you will be billed $12.99/mo by Verizon. You may cancel your subscription to The Disney Bundle through Verizon.

Any change might take up to 15 minutes to appear on your Verizon account.

☑ I accept Disney Bundle Terms & Conditions

**Enroll in Disney Bundle** Go back

verizon✓

Enroll Review

## Awesome! You're almost done!

Your request was completed successfully.

## Next steps

Starting now, you have The Disney Bundle on us. Click "Go to Disney" to set up your Disney+, Hulu, and ESPN+ accounts so you can start streaming.

Any change might take up to 15 minutes to appear on your Verizon account.

**Go to Disney** View all add ons

**Second**, once Swartz finally reached the activation acknowledgement page, he was met with exceedingly small text in muted colors against a dark background, contrasted with a blue button and larger text saying, "AGREE & CONTINUE."




Defendant's self-serving description of the activation acknowledgement page as "straightforward" does nothing to change the facts: The relevant text is in "tiny gray font considerably smaller than the font used in the surrounding website elements" (*Berman v. Freedom Fin. Network, LLC*, 30 F. 4th 849, 856-57 (9th Cir.

2022)); the text is not clearly contrasted against the webpage background (*contra Meyer v. Uber Tech., Inc.*, 868 F.3d 66 (2d Cir. 2017) (reasonable notice where "dark print contrasts with the bright white background"); and there is no checkbox to indicate the user has read the terms (*contra Hine v. LendingClub Corp.*, No. 2:22-CV-00362-CRE, 2023 WL 8112324, at *7 (W.D. Pa. Nov. 22, 2023) ("Before being able to click the "Confirm" button, Plaintiff needed to check the electronic signature and acceptance of agreements box, which specifically stated she was affixing her signature and accepting [the agreements]").[6]

**Finally,** Defendant's own corporate designee Deepti Mutnuru, who was responsible for designing the "flow" for a customer to activate his subscription, confirmed that the purpose of the activation acknowledgement page was to get a user to continue and move to the next step of signing up. Plaintiff's Responsive Facts at ¶¶ 27-29. She agreed that a user did not need to view the Subscriber Agreement before clicking continue and admitted that Swartz "could have gone through the whole process without clicking on that subscriber link." *Id.* at ¶¶ 33, 41. She agreed that Disney could have used a larger font on the page and designed it so that a user was required to click on and view the Subscriber Agreement before they clicked on Agree & Continue. *Id.* at ¶¶ 32, 34. And she agreed that Disney could have required

[6] Defendant lists five factors that courts consider when evaluating clickwrap agreements, which are culled from different cases and jurisdictions and not binding on this Court. *See* Def.'s Mot. at 14-15.

a user to check a box confirming they had read the Subscriber Agreement, or to scroll through all of its policies before clicking "agree and continue. *Id.* at ¶¶ 35-36. Disney could have taken a number of steps to ensure that users had reasonable notice of and assented to the Subscriber Agreement when signing up for the Disney Bundle. They did not, because allowing a user to sign up without reviewing or even opening the Subscriber Agreement was, for Defendant, a "best practice," one that "customers are used to." *Id.* at ¶ 37.

Indeed, studies have shown that most consumers do not click on hyperlinks to access the Subscriber Agreement or if they do click they spend only seconds reviewing the multi-page terms. Plaintiff's Responsive Facts at ¶¶ 38-39. In fact, Ms. Mutnuru admitted that she herself has never read the Subscriber Agreement and Privacy Policy . *Id.* at ¶ 40.

At its heart, an arbitration agreement requires a wronged party to give up their constitutional right to a jury trial. Asking a person to waive such a fundamental right should not be done lightly. To avoid this, the Pennsylvania Superior Court has established a rigorous set of requirements for companies trying to secure a consumer's waiver of their right to a jury trial and consent to arbitration. The registration pages at issue in *Chilutti* are strikingly similar to Defendant's activation acknowledgment webpage. One included a "Create Account" button above the statement "By clicking 'Create Account,' you agree to Uber's Terms and Conditions

and Privacy Policy." *Chilutti*, 300 A.3d at 444-45. The other included a page reading "By tapping the arrow below, you agree to Uber's Term of Use and acknowledge you have read the Privacy Policy." *Id.* at 445-46. In both cases, like Defendant's Subscriber Agreement here, the Terms and Conditions were hyperlinked, and a user did not have to click on or view them to proceed. *Id.* at 444-46. Sitting *en banc*, the court held that this did not provide reasonably conspicuous notice to users of the terms and conditions including the arbitration provision. *Id.* at 449. This Court should reach the same conclusion.

### B. Defendant's 2022 Email Is Not Valid Notice and Swartz Did Not Manifest Assent.

Defendant next argues that a September 28, 2022 email from Disney+ (Def.'s Facts at ¶ 23 and Def. Exhibit 9) somehow put Swartz on notice of the Subscriber Agreement and caused him to waive his rights. However, where, as here, a user receives an email regarding updated terms that does not explicitly advise that continued use acts as a manifestation of the user's intent to be bound, courts have found that that the user did not receive adequate notice. *See Jackson v. Amazon.com, Inc.*, 65 F. 4th 1093, 1100-1101 (9th Cir. 2023) (plaintiffs not bound where "there [was] no evidence that the alleged notice [defendant] sent …. informed them that continuing to [use defendant's services] would bind [plaintiffs] to the new terms"); *Nghiem v. Dick's Sporting Goods, Inc.*, Case No. SACV 16-00097-CJC(DFMx), 2016 WL 9131962, at *3-4 (C.D. Cal. July 5, 2016) (internal citations omitted) (No

inquiry notice of terms where plaintiff was not required to accept the terms before completing certain functions, in contrast to "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound by terms and conditions").

Additionally, for continued use to constitute assent, the email must provide notice of that; it cannot merely notify of a change in terms. *See Gezu v. Charter Commc'ns*, 17 F.4th 547, 553 (5th Cir. 2021) (plaintiff bound by updated terms sent by defendant via email that read he "would be automatically enrolled…unless [he] chose to opt out of participating…within…30 days") (internal citations omitted); *Grice v. Uber Techs., Inc.*, No. CV182995PSGGJSX, 2020 WL 497487, at *11 (C.D. Cal. Jan. 7, 2020) (plaintiff bound by updated terms sent by defendant via email because "[t]his email expressly stated that [defendant] revised the arbitration agreement and that continued use of the Uber App would serve as consent to the updated terms"); *see also Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213, at *4 (N.D. Ill. June 28, 2019).

Defendant asks this Court to follow the Northern District of California's opinion in *Sadlock v. Walt Disney Company*, Case No. 22-cv-09155-EMC, 2023 WL 4869245, at *13 (N.D. Cal. July 31, 2023). But the *Sadlock* court was exceedingly careful in limiting its decision to the specific facts of that case; it was "not opining that, in any instance in which a defendant sends an email giving notice of update

terms and a plaintiff continues to use the defendant's service, the inquiry notice test has been satisfied." *Id*. It even outlined several questions for courts to consider when confronted with such emails, including whether the plaintiff actually saw the email. *See id* (court emphasizing that plaintiff did not contend that he did not receive or see the emails). In contrast, Swartz testified that he does not read any emails he receives from Disney. *See* Defendant's Exhibit 7 (January 10, 2024 Deposition of Nate Swartz, 109:19-14). As he did not read the contents of the email, he did not see the hyperlink to the updated Subscriber Agreement, the hyperlink to the prior version, or the text mentioning the arbitration agreement at the very bottom of a 3 page email.

Moreover, the Ninth Circuit has denied a motion to compel under similar circumstances. *Sifuentes v. Dropbox, Inc.*, No. 20-CV-07908-HSG, 2022 WL 2673080, at *5 (N.D. Cal. June 29, 2022), *appeal dismissed*, No. 22-16367, 2023 WL 2455684 (9th Cir. Jan. 20, 2023). In *Sifuentes*, the defendant sent the plaintiff an email about its modified terms of service, containing a hyperlink to the new terms of service and bullet points highlighting certain changes, including a bullet point about arbitration. *Id*. at *2.

The *Sifuentes* court expressed doubt that such an email constituted reasonably conspicuous notice because "[t]here [was] nothing in the record to suggest the Plaintiff could not use the service until he indicated his assent" or "that he would have been advised of new terms and conditions while using Defendant's services."

*Id*. at *4. In fact, the court suggested that any email notice of updated terms, without some notice in defendant's service itself, would be inadequate. *See id* ("Given the complete lack of notice within Defendant's service itself, Plaintiff's ongoing use of the service is irrelevant to determining whether he had actual or constructive notice of the [updated] terms of service"). The court denied defendant's motion to compel arbitration, finding that the email did not constitute actual or inquiry notice of the updated terms of service, and without notice, there could be no manifestation of mutual assent, regardless of plaintiff's continued use of defendant's services. *Id*. at *4-5. As previously detailed, other courts have reached the same conclusion.

The present case is almost identical to *Sifuentes*. After receiving the 2022 email from Disney, there was nothing stopping Swartz from using ESPN+ until he "indicated his assent," or until he even read the email—there is no evidence that Defendant monitored whether he opened the email. And there is no evidence that while using ESPN+, Swartz would have been notified in any way of an update to the Subscriber Agreement.

Further, unlike the above cases where courts granted motions to compel arbitration after an update email, the email from Disney in this case did not explicitly state that continued use upon receiving the email would constitute acceptance of the new terms. Rather, it says, "[f]or prior and existing subscribers, like you, these terms will be effective beginning on November 3, 2022…We encourage you to review the

updated Subscriber Agreement in full…Once effective, it will govern your use and enjoyment of your Disney+ or ESPN+ subscription." *See* Defendant's Exhibit 9. This indirect and confusing language does not provide any instruction on 1) how to accept or consent to the new terms, 2) whether the new terms automatically kick in or if there are some other steps that need to be taken, 3) how to proceed if the user does not wish to accept or consent to the terms. The email's vague language is a far cry from direct language like "continued use of [defendant's] app will serve as consent to the updated terms," *Grice*, 2020 WL at *11, or "[users] would be automatically enrolled…unless they chose to opt out of participating…" *Gezu*, 17 F.4th at 553 (5th Cir. 2021).

Therefore, this Court should follow *Sifuentes* and other courts and find Disney's 2022 email did not constitute reasonably conspicuous notice of the Subscriber Agreement, and Swartz' continued use of ESPN+ did not constitute assent.

Under Pennsylvania law "a stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration." *Chilutti*, 300 A.3d at 449-50 A valid assent to arbitration is established by either an explicit statement that a consumer is waiving their right to a jury trial, which is not hidden in a list of terms, but prominently displayed. *Chilutti*, 300 A.3d at 449-50. The 2022 amendment email from Defendant does not meet the requirements of Pennsylvania

law and therefore cannot bind Swartz to waive his trial rights and submit to arbitration.

**C. Swartz's Continued Use of His ESPN+ Account Is Not Assent.**

Defendant further argues that Swartz somehow agreed to its arbitration provisions by continuing to use his ESPN+ account after Defendant's initial Motion to Compel Arbitration. This argument not only ignores the facts of this case but advances an unfair and illogical punishment on people in Swartz's position. The argument is based on a single non-precedential Order from the Second Circuit which, in addition to being incorrect, is not binding on this Court.

Initially, it should be noted that Swartz's ESPN subscription is at least monthly, if not annual. *See* Plaintiff's Responsive Facts at ¶ 26. Thus, if Swartz were to immediately cease looking at videos on his ESPN+ account the moment Defendant filed its Motion to Compel Arbitration, Swartz would have to effectively give up services he had already paid for. Defendant's argument gives Swartz a Hobson's choice in the sense that it forces him to choose between pursuing the claims in his litigation or using the ESPN+ services he had already paid for.

Next, applying Defendant's logic to its own conduct, Swartz could argue that when he filed his original Complaint (weeks before any motion to compel arbitration) Defendant was aware the Swartz either didn't believe he was bound by the arbitration clause or had rejected it. Thus, Defendant could and should have

terminated Swartz's Disney bundle, including his ESPN+ service immediately. That Defendant did not terminate Swartz's service establishes that Defendant was willing to allow Swartz to continue receiving service without being bound to arbitrate claims.[7]

Defendant can cite no case under Pennsylvania or Third Circuit law requiring the type of assent it now asserts. Defendant relies upon *Nicosia v. Amazon.com, Inc*. 815 F. App'x 612 (2d Cir. 2020), which is just a Summary Order that "does not have precedential effect." Moreover, the *Nicosia* Order gives no analysis of basis for its surprising claim that a filing of a motion to compel arbitration can somehow trigger assent by an opposing party. Rather, the Court simply states this principle.[8]

Of course, Pennsylvania law under *Chilutti, supra*, does not contemplate a waiver of jury trial rights simply by continuing to use the service or product at issue after a Motion to Compel Arbitration has been filed.

---

[7] Defendant's use of this later assent argument now, given that Defendant did not raise the same argument in its prior motion, or at Swartz's deposition, shows it is simply a "gotcha" attempt by Defendant to sneak in its preferred arbitration agreement.

[8] The other case cited by Defendant, *In re Ring LLC Priv. Litig*., Case No. CV 19-10899-MWF, 2021 WL2621197 (C.D. Cal. June 24, 2021) also gives no analysis, but simply references the holding in *Nicosia*. A California District Court case is obviously not binding on this Court. Further, the *In re Ring* court was applying California state law. *Id*. at *3.

## IV. CONCLUSION

Defendant has not, and cannot, offer facts sufficient to establish that Swartz waived his right to a jury trial or agreed to any arbitration provision. Therefore, Defendant's Motion to Compel Arbitration must be denied.

Date: March 1, 2024

Respectfully submitted,

*/s/ John A. Macoretta*
John A. Macoretta (PA 60094)
Jeffrey L. Kodroff (PA 55780)
Diana J. Zinser (PA 203449)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300
Fax: (215) 496-6611
jmacoretta@srkattorneys.com
jkodroff@srkattorneys.com
dzinser@srkattorneys.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024 a true and correct copy of the foregoing document was filed using the Court's CM/ECF System, which will serve all counsel of record.

**BY:** *_/s/ John A. Macoretta_*
John A. Macoretta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESPN Inc.,<br><br>Defendant. | Case No.: 1:22-cv-01523<br><br>(Hon. Karoline Mehalchik) |

**LOCAL RULE 7.8(b)(2) CERTIFICATE**

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Brief in Support of Plaintiff's Opposition to Defendant ESPN Inc.'s Renewed Motion to Compel Arbitration and Stay this Action of 4,392 words, exclusive of the caption, Table of Contents and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: March 1, 2024

**BY:** */s/ John A. Macoretta*
John A. Macoretta