**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESPN Inc.,<br><br>Defendant. | Case No.: 1:22-cv-01523<br><br>(Hon. Karoline Mehalchik) |

**PLAINTIFF NATE SWARTZ'S RESPONSE TO DEFENDANT ESPN'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND ADDITIONAL FACTS IN OPPOSITION TO MOTION TO COMPEL ARBITRATION**

Plaintiff Nate Swartz ("Swartz") hereby responds to Defendant ESPN Inc.'s ("Defendant") Statement of Undisputed Material Facts as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted that Swartz is a citizen of Pennsylvania and currently maintains an ESPN+ Subscription. The statements in Defendant's footnote are legal conclusions, not facts, and are objected to.

5. Admitted that Swartz accessed his ESPN+ account using the email address Natemswartz@hotmail.com between July 27, 2019 and November 30, 2020. All allegations in the Declaration of Clare Lynch are objected to as inappropriate and untimely. Further, Swartz subscribed to and used ESPN+ prior to July 27, 2019 and after November 30, 2020 using the Natemswartz@gmail.com email addresses. *See* Exhibit 1,[1] Declaration of Nate Swartz in Support of His Opposition to Defendant's Motion to Compel Arbitration, ECF No. 21-1 ("Swartz Decl.") Exhibit A (Jan. 15, 2017 ESPN Insider subscription confirmation); Exhibit 2 (Jan. 15, 2019 ESPN+ subscription confirmation); Exhibit 3 (Jan. 4, 2021 Disney Bundle subscription confirmation).

6. Admitted that Swartz received the email SWARTZ0000753-SWARTZ0000754. Denied that the end of the relevant billing period was December 1, 2020. *See* Exhibit A to Exhibit 1; Exhibit 2; Exhibit 4 (Jan. 15, 2020 ESPN+ subscription confirmation); Deposition of Nate Swartz ("Swartz Dep.", attached to Defendant's Statement of Facts as Defendant's Exhibit 7) at 94:25-96:21. Further denied that Swartz's access to his ESPN+ account was terminated at any time. *See* Swartz Dep. at 82:14; Exhibit 10 (Dec. 11, 2020 email from Disney Account Member Services: "Your account was just used to sign into ESPN.com."); Exhibit 5 (Dec. 14, 2020 email saying the same); Exhibit 6 (Dec. 19, 2020 email saying the

[1] Each of Swartz's Exhibits are in the attached Declaration of John Macoretta.

same); Exhibit 7 (Dec. 24, 2020 email saying the same); Exhibit 8 (Dec. 24, 2020 ESPN Member Services email regarding "Your ESPN Account Passcode"); Exhibit 9 (Dec. 26, 2020 ESPN email saying the same).

7. Denied that Swartz did not have access to his ESPN+ account at any time. *See* Exhibit A to Exhibit 1; Exhibit 2; Exhibit 5; Exhibit 10; Exhibit 6; Exhibit 7; Exhibit 9; Swartz Dep. at 82:14; 133:14-134:1; 136:11-23; 139:4-140:11; 141:5-13; 144:17-24; 147:6-8. Admitted that Swartz did enroll in and activated Disney Bundle Subscription using Natemswartz@gmail.com in January 2021. The Lynch Declaration is objected to as untimely and inappropriate.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Denied as stated. This paragraph simply provides a skewed and incomplete written description of the screenshot included in the prior paragraph and produced as Exhibit B to the Declaration of Deepti Mutnuru ("Mutnuru Decl.," attached to Defendant's Statement of Facts as Defendant's Exhibit 2). That screenshot is a document which speaks for itself. Further, Disney's corporate designee, Deepti Mutnuru, testified that the screenshot described here was designed,

by her and others, not to advise potential customer of the terms he was agreeing to but rather to get that customer through the flow and "start watching Disney+." *See* Deposition of Deepti Mutnuru ("Mutnuru Dep.," attached to Defendant's Statement of Facts as Defendant's Exhibit 3) at 14:13-15:15, 67:8-10, 67:19-68:14.

14. Denied as stated. Swartz was not required to read or even view the Subscriber Agreement before proceeding in the subscription process and does not recall doing so. *See* Exhibit 1 at ¶¶ 26-27. Further, Ms. Mutnuru testified that subscribers were not required to read or even view the Subscriber Agreement. *See* Mutnuru Dep. at 52:8-53:18. Nor was she aware of any analytics showing whether Swartz had clicked on and viewed the Subscriber Agreement. *Id.* at 54:7-17.

15. Admitted.

16. Denied as stated. Swartz's assent to the Subscriber Agreement was never given or required. Swartz was not required to read or even view the Subscriber Agreement before proceeding in the subscription process and does not recall doing so. *See* Swartz Decl. at ¶¶ 26-27. Further, Ms. Mutnuru testified that subscribers were not required to read or even view the Subscriber agreement. *See* Mutnuru Dep. at 52:8-53:18. Nor was she aware of any analytics showing whether Swartz had clicked on and viewed the Subscriber Agreement. *Id.* at 54:7-17. Swartz admits the language in this paragraph accurately quotes the Subscriber Agreement.

17. Admitted that the Subscriber Agreement at Exhibit D to Defendant's Exhibit 2 contains an arbitration and class action waiver provision, but whether this provision is binding is a conclusion of law, and therefore denied.

18. Denied as stated. While this paragraph quotes language of the arbitration provision correctly, such language was not "conspicuous" nor was it "prominently featured" anywhere. Swartz was not required to read or even view the Subscriber Agreement before proceeding in the subscription process and does not recall doing so. *See* Exhibit 1 at ¶¶ 26-27. Further, Defendant's designee testified that subscribers were not required to read or even view the Subscriber agreement. *See* Mutnuru Dep. at 52:8-53:18. *See also*, Swartz's response to Paragraph 13, above.

19. Admitted that the term "dispute" was defined in this paragraph.

20. Admitted that Defendant has correctly quoted the arbitration language in this paragraph. It is specifically denied as a legal conclusion that such language "explicitly" did anything.

21. Admitted.

22. Admitted.

23. Admitted that Swartz received the email identified as Defendant's Exhibit 9. The remainder of this paragraph describes in a skewed manner the contents of that email and is therefore objected to. The email is a document which

speaks for itself. Further, the referenced arbitration provision is at the end of this three-page email. Swartz has also testified that he did not read emails from Defendant regarding his subscriptions. *See* Swartz Dep. at 109:19-110:7; 112:9-21.

24. Admitted

25. Admitted.

26. Admitted as to all except the payment of fees monthly. The timing of any fees Swartz pays for his Disney Bundle is unknown, *See* Swartz Dep. at 94:25-96:21.

**Plaintiff Swartz's Additional Material Facts**

In opposition to Defendant's Motion to Compel Arbitration, Swartz provides the following additional facts:

27. Ms. Mutnuru testified that she was responsible for the "user journey" which is the step-by-step process flow for a customer to activate his subscription. Mutnuru Dep. at 14:15-21. Ms. Mutnuru testified that she was the person who worked with the engineers to create the actual process by which customers would sign up. Mutnuru Dep. at 12:22-15:7.

28. Ms. Mutnuru described this flow as the "customer journey," which "are the steps that a user is taking to get something done or to do something." Mutnuru Dep. at 67:19-68:4.

29. Ms. Mutnuru acknowledged that the goal of the flow or journey "was to start watching Disney+." Mutnuru Dep. at 68:10-14.

30. In her Declaration, Ms. Mutnuru describes the series of screens, both Verizon and Disney, that a customer such as Swartz would have to navigate in order to become an ESPN+ subscriber. Mutnuru Decl., Defendant's Exhibit 2, at ¶ 12.

31. A chart detailing the flow of screens necessary for Swartz to activate his Disney+ subscription is attached as Exhibit B to the Mutnuru Decl., Defendant's Exhibit 2.

32. Ms. Mutnuru refused to admit that the font size on the enrollment screen was small but admitted that it could have been bigger. Mutnuru Dep. at 33:4-10.

33. Ms. Mutnuru confirmed that a potential subscriber did not need to click on either the Privacy Policy or Subscriber Agreement hyperlinks within that screen to move forward in the process and click on the "agree and continue" button. Mutnuru Dep. at 36:8-11.

34. Ms. Mutnuru admitted that Disney could have required a potential customer to click on the Subscriber Agreement button before continuing. Mutnuru Dep. at 36:17-25.

35. Ms. Mutnuru admitted that Disney could have created its webpages to require a customer to scroll through all of its policies, similar to Apple, before clicking on "agree and continue." Mutnuru Dep. at 38:8-39:14.

36. Ms. Mutnuru admitted that Disney could have also required a potential customer to check a box acknowledging review of the subscriber agreement, similar to the way it required customers to check a box to opt out of marketing announcements. Mutnuru Dep. at 39:15-22.

37. Ms. Mutnuru claimed that not requiring customers to actually review or even open the subscriber agreement and other links was a "best practice," which she described as "something that customers are used to" and is seen on other websites. Mutnuru Dep. at 37:2-23.

38. Studies indicate that only a small percentage of consumers actually click through links with terms and conditions, subscriber agreements or similar language. *See* Exhibit 11, "The Biggest Lie on the Internet: Ignoring the Privacy Policies and terms of Service Policies of Social Networking Services" (93% of students asked to join a fictitious social networking service agreed to the Terms of Service, which included outrageous clauses including the assignment of a first-born child; over 70% of participants simply used the clickwrap and never even looked at the Privacy Policy); and Exhibit 12, "91 Percent of Americans Agree to terms of Service Without Reading".

39. The authors of "The Biggest Lie on the Internet" study interpret their data to conclude that consumers ignoring Terms of Service is by design; "clickwraps feed the desire to pursue the ends of digital production as quickly as possible, while

facilitating fastlanes to monetized sections of services…" Exhibit 11 at SWARTZ001013.

40. Ms. Mutnuru acknowledged that she herself had never actually read the complete Subscriber Agreement or Privacy Policies. Mutnuru Dep. at 40:8-20.

41. Ms. Mutnuru admitted that "Swartz could have gone through the whole process without clicking on that subscriber agreement link." Mutnuru Dep. at. 51:13-17; 51:25-52:7; 53:3-8.

42. Ms. Mutnuru admitted that Swartz's 2019 Disney+ subscription did not include access to ESPN streaming services. Mutnuru Dep. at 24:22-25:13; 25:21-26:20.

43. Swartz had a standalone subscription to ESPN streaming services going back to 2017. *See* Exhibit A to Exhibit 1; Exhibit 2; Exhibit 4.

44. Swartz never intended to stop accessing ESPN streaming services and does not recall ever cancelling access to ESPN streaming services. *See* Swartz Dep. at 141:5-13.

45. Swartz continued to access ESPN streaming services between November 2020 and January 2021. There was no gap in his access to ESPN streaming services. *See* Swartz Dep. at 82:12-15; 133:14-134:1; 136:11-23; 139:4-140-11; 144:17-24; 147:6-8; *see also* Exhibit 13 (Nov. 9, 2020 email from Disney Account Member Services: "Your account was just used to sign into ESPN.com.");

Exhibit 14 (Nov. 27, 2020 email saying the same); Exhibit 5; Exhibit 6; Exhibit 7; Exhibit 9; Exhibit 10.

46. There is no evidence that Swartz ever read the 2022 Update Email.

47. There is no evidence that Swartz ever read or viewed the Subscriber Agreement containing the arbitration provision.

48. Swartz does not recall receiving, viewing, or reading any Subscription Agreement. *See* Swartz Decl. at ¶ 27.

49. Swartz does not recall ever seeing the word "arbitrate" or any discussion of arbitration when he subscribed to ESPN streaming services. *See* Plaintiff's Second Suppl. Resp. to Defendant's Interrogatory No. 9.

Date: March 1, 2024

Respectfully submitted,

*/s/ John A. Macoretta*

John A. Macoretta (PA 60094)
Jeffrey L. Kodroff (PA 55780)
Diana J. Zinser (PA 203449)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300
Fax: (215) 496-6611
jmacoretta@srkattorneys.com
jkodroff@srkattorneys.com
dzinser@srkattorneys.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024 a true and correct copy of the foregoing document and accompanying exhibits were filed using the Court's CM/ECF System, which will serve all counsel of record.

**BY:** *<u>/s/ John A. Macoretta</u>*
John A. Macoretta