**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ESPN Inc.,<br><br>*Defendant*. | Civil Action No. 1:22-cv-01523<br>(Hon. Karoline Mehalchick) |

**REPLY BRIEF IN SUPPORT OF ESPN INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ........................................................................................ 3

A. Plaintiff Ignores the Controlling Law for Evaluating the Enforceability of the Subscriber Agreement ........................................ 3

B. Plaintiff Concedes He Assented to the Subscriber Agreement When Enrolling in His 2021 Disney Bundle Subscription .............................. 6

C. Plaintiff Concedes That He Received Additional Notice of the Arbitration Agreement Through the 2022 Update Email And Continued to Use His Disney Bundle Services .................................. 14

D. Plaintiff Concedes that He Continues to Use Disney Bundle Services Despite Knowing of the Binding Arbitration Provision ....... 17

CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anand v. Heath*,
2019 WL 2716213 (N.D. Ill. June 28, 2019)....15, 17

*Armenti v. Tomalis*,
2016 WL 6493483 (M.D. Pa. Nov. 2, 2016) (Jones, J.)....1

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....4, 5, 6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....8, 9, 11

*Chilutti v. Uber Technologies, Inc.*,
300 A.3d 430 (Pa. Super. Ct. 2023)....1, 3, 5, 6

*Chilutti v. Uber Techs., Inc.*,
No. 257 EAL 2023 (Pa. Aug. 18, 2023)....3

*In re City of Phila. Litig.*,
158 F.3d 723 (3d Cir.1998)....5

*Defillipis v. Dell Fin. Servs.*,
2014 WL 4198015 (M.D. Pa. Aug. 22, 2014)....4, 7

*Del. River Waterfront Corp. v. Wellspring Software, Inc.*,
2022 WL 17869139 (E.D. Pa. Dec. 22, 2022)....13

*In re Facebook Biometric Info. Priv. Litig.*,
185 F.Supp.3d 1155 (N.D. Cal. 2016)....16

*Gezu v. Charter Commc'ns*,
17 F.4th 547 (5th Cir. 2021)....14, 16, 17

*Grice v. Uber Techs., Inc*,
2020 WL 497487 (C.D. Cal. Jan. 7, 2020)....15, 16, 17

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013)....18

## TABLE OF AUTHORITIES

**Page(s)**

*Hine v. LendingClub Corp.*,
2023 WL 8113234 (W.D. Pa. Nov. 22, 2023) .......... 13

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 14, 15

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
581 U.S. 246 (2017) .......... 4, 5, 6

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612 (2d Cir. 2020) .......... 17

*Patrick v. Running Warehouse, LLC*,
2024 WL 542831 (9th Cir. Feb. 12, 2024) .......... 11, 12

*Patrick v. Running Warehouse, LLC*,
Case No. 22-56078, ECF No. 14 (June 26, 2023) .......... 11

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
673 F.3d 221 (3d Cir. 2012) .......... 4

*In re Ring LLC Priv. Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021) .......... 17

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 2, 14, 15, 16

*Sash v. Hogsten*,
2009 WL 249649 (M.D. Pa. Feb. 2, 2009) (Rambo, J.) .......... 1

*Sifuentes v. Dropbox, Inc.*,
2022 WL 2673080 (N.D. Cal. June 29, 2022), *appeal dismissed*,
2023 WL 2455684 (9th Cir. Jan. 20, 2023) .......... 14, 15

*Smith v. City of Allentown*,
589 F.3d 684 (3d Cir. 2009) .......... 13

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) .......... 4

*West v. Uber Techs.*,
2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

Federal Arbitration Act ....................3, 4, 6

**Other Authorities**

Fed. R. Civ. P. Rule 56 ....................13

Local Rule 56.1 ....................1

Nothing in Plaintiff's Opposition to ESPN Inc.'s ("ESPN") Renewed Motion to Compel Arbitration ("Opposition" or "Opp'n") meaningfully contests that, on at least three occasions, Plaintiff had notice of and assented to the Disney+ and ESPN+ Subscriber Agreement ("Subscriber Agreement") and the arbitration and class action waiver provisions therein ("Arbitration Provision"). The Opposition is a string of inapposite case law, so-called "material" facts[1] that have no relevance to whether Plaintiff agreed to arbitrate, and arguments that have no bearing on this threshold question. The Court should grant ESPN's Renewed Motion to Compel Arbitration ("Motion") for four principal reasons.

***First***, the gravamen of Plaintiff's Opposition rests on the Pennsylvania Superior Court's decision in *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430 (Pa. Super. Ct. 2023). But that decision—which is currently being appealed to the Pennsylvania Supreme Court—is preempted by controlling federal law and has never been applied by any federal court to invalidate a binding arbitration agreement.

---

[1] Plaintiff's submission of a counter-statement of facts is "'neither contemplated nor permitted by the Local Rules.'" *See, e.g., Armenti v. Tomalis*, 2016 WL 6493483, at *2 (M.D. Pa. Nov. 2, 2016) (Jones, J.) (quoting *Barber v. Subway*, 131 F.Supp.3d 321, 322 n.1 (M.D. Pa. 2015) (Conner, C. J.) (noting that Local Rule 56.1 "neither contemplate[s] nor permit[s]" a separate counter-statement of the material facts)); *Sash v. Hogsten*, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (Rambo, J.) (explaining that Local Rule 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the non-moving party how to properly respond to the movants' statement of material facts").

***Second***, Plaintiff admits that the only way he could have enrolled in and activated his Disney Bundle subscription on January 3, 2021 was by completing the Subscription Activation Process detailed in ESPN's Motion. ECF No. 44 ("Br.") at 5–7. That concession is fatal to his attempt to bring claims in federal court, because as ESPN's Motion makes clear, the notice provided in the Disney Bundle activation webpage meets each of the key five factors considered when determining the sufficiency of a notice. Plaintiff fails to muster any response to four of the five elements. Instead, Plaintiff conjures three new considerations, without any support in the case law, to contest the notice provided. None are relevant for evaluating inquiry notice.

***Third***, Plaintiff concedes that he received, marked read, and produced the exact same email update that the Northern District of California had already held provided "reasonably conspicuous notice of the Subscriber Agreement" to users. *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *13 (N.D. Cal. July 31, 2023); *see also* SUMF ¶ 23 (ECF No. 45); ECF No. 45-8 at 109:19–110:7. As in *Sadlock*, Plaintiff admits that he continued to use his Disney Bundle subscription after receiving this email on September 28, 2022 ("2022 Update Email"), thereby manifesting his assent to the Subscriber Agreement.

***Fourth***, Plaintiff also concedes that he learned of the Subscriber Agreement through ESPN's November 28, 2022 Motion to Compel Arbitration ("Initial Motion

to Compel Arbitration"),[2] and continued to avail himself of Disney Bundle services, including ESPN+, throughout the *nearly sixteen months* since the filing of that motion. Plaintiff's continued use of ESPN's services during this period—while knowing that he was required to agree to the Subscriber Agreement to do so—requires that Plaintiff arbitrate this dispute.

## ARGUMENT

### A. Plaintiff Ignores the Controlling Law for Evaluating the Enforceability of the Subscriber Agreement

Ignoring Supreme Court precedent and federal law, Plaintiff appears to argue that the state court decision in *Chilutti* authorizes this Court to disregard the Federal Arbitration Act ("FAA").[3] But *Chilutti* is preempted by the FAA and no federal court has ever applied its reasoning to invalidate a binding arbitration agreement.[4]

[2] ESPN did not "abandon half of [the] prior argument[s]" it advanced in its Initial Motion to Compel Arbitration. *See* Opp'n at 2–3. The 2019 Subscriber Agreement remains a valid avenue for this Court to issue an order compelling arbitration, *see* ECF No. 13 at 11–15, but the instant Motion is based on the undisputed, dispositive facts developed during the limited discovery period.

[3] Plaintiff misrepresents that ESPN "does not dispute that Pennsylvania law should apply." Opp'n at 5 n.3. ESPN has consistently taken the position that the Subscriber Agreement includes a "clear choice-of-law provision providing for New York law to govern Plaintiff's claims[.]" Br. at 10 n.2. However, because the contract formation law is materially similar between New York and Pennsylvania, ESPN acknowledged that the "Court need not resolve any choice-of-law issues" to resolve ESPN's Motion. *Id*. That does not concede the application of Pennsylvania law.

[4] *Chilutti* is currently on appeal to the Pennsylvania Supreme Court. *See* Pet. for Allowance of Appeal, *Chilutti v. Uber Techs., Inc.*, No. 257 EAL 2023 (Pa. Aug. 18,

The FAA was enacted to ensure arbitration agreements are placed on "'an equal footing' with other contracts." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228–29 (3d Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649 (2022) (noting that the FAA was enacted in response to judicial hostility towards arbitration). While federal courts generally apply state law principles of contract formation when evaluating the enforceability of arbitration provisions, the FAA preempts any conflicting state rules that either prohibit arbitration outright, or that "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Defillipis v. Dell Fin. Servs.*, 2014 WL 4198015, at *7 (M.D. Pa. Aug. 22, 2014) (quoting *Concepcion*, 563 U.S. at 339 n.3). Practically speaking, the FAA's "equal-treatment principle" means that:

> A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, ***but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'***

*Viking River Cruises*, 596 U.S. at 650 (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)) (emphasis added).

This is true even when a state law rule is aimed at protecting an individual's right to a jury trial. In *Kindred Nursing Centers*, for example, the Supreme Court

---

2023). The Court should reject Plaintiff's invitation to ignore decades of precedent favoring arbitration based on an intermediate state court decision.

struck down the Kentucky Supreme Court's "clear-statement rule" aimed at "safeguard[ing] a person's 'right to … trial by jury'" because it "fail[ed] to put arbitration agreements on an equal plane with other contracts." 581 U.S. at 252. The Court held that Kentucky "did exactly what *Concepcion* barred: adopt a legal rule hinging on the primary characteristic of an arbitration agreement—namely, a waiver of the right to go to court and receive a jury trial." *Id*. (citing *Concepcion*, 563 U.S. at 341–42).

The Pennsylvania Superior Court's decision in *Chilutti* likewise fails to place arbitration agreements on "equal footing" with other contracts, because it adopts a stricter burden of proof that is only applicable to arbitration agreements. In *Chilutti*, the Pennsylvania Superior Court acknowledged that the agreements at issue "arguably [met] the [notice and assent] standard[s]" articulated by the Ninth Circuit, but "because the constitutional right to a jury trial should be afforded the greatest protection under the courts of this Commonwealth,"[5] the court "conclude[d]" that "*a stricter burden of proof is necessary* to demonstrate a party's unambiguous manifestation of *assent to arbitration*." *Chilutti*, 300 A.3d at 449–50 (emphasis

[5] Moreover, "[t]he right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law." *In re City of Phila. Litig.*, 158 F.3d 723, 726 (3d Cir.1998). The Supreme Court has consistently reaffirmed the FAA's equal treatment principle. *See, e.g.*, *Kindred Nursing Ctrs.*, 581 U.S. at 252; *Concepcion*, 563 U.S. at 341–42.

added). This heightened standard—applicable only to arbitration agreements—violates the FAA's equal treatment principle and is therefore preempted by the FAA. *See Kindred Nursing Ctrs.*, 581 U.S. at 252; *Concepcion*, 563 U.S. at 341–42. Notwithstanding Plaintiff's arguments to the contrary, *Chilutti* does not permit this Court to disregard the FAA and Supreme Court precedent.

Moreover, *Chilutti* is also distinguishable on its facts. The *Chilutti* court was evaluating a "browsewrap" agreement and the plaintiff represented that she did "not see any hyperlinks[,]" "click on any hyperlinks[,]" or "review" the "Terms and Conditions" or "Privacy Policy" during the registration process. 300 A.3d at 444–45. Here, as this Court previously recognized, the agreement at issue is a "clickwrap agreement," *see* ECF No. 29, and Plaintiff has only testified that he does not recall the steps he took to enroll in and activate his Disney Bundle membership, not that he affirmatively did not see them. *See* SUMF ¶ 15.

**B. Plaintiff Concedes He Assented to the Subscriber Agreement When Enrolling in His 2021 Disney Bundle Subscription**

Plaintiff admits that he enrolled in and activated a Disney Bundle subscription through Verizon on January 3, 2021, and that to do so he was required to complete the Subscription Activation Process detailed in ESPN's Motion. Pl.'s SUMF ¶¶ 8, 10 (ECF No. 47).[6] Plaintiff likewise does not dispute that he could not have enrolled

---

[6] Plaintiff admits that he had an ESPN+ subscription using the email address natemswartz@hotmail.com between July 27, 2019 and November 30, 2020, then

in the Disney Bundle, nor accessed his Disney Bundle promotional subscription—including enrolling in, activating, and accessing ESPN+—without clicking the large blue "AGREE & CONTINUE" button located just below the four sentences of text describing the terms to which users must acknowledge and agree before completing their Disney Bundle subscription activation (the "Activation Acknowledgment"), which stated that "[b]y clicking 'Agree & Continue,' you agree to our Subscriber Agreement." *See* SUMF ¶¶ 13–14. Thus, the only remaining issue before the Court is whether the Disney Bundle activation webpage provided sufficient notice of the Subscriber Agreement such that Plaintiff was on inquiry notice of its terms.[7] The Disney Bundle activation webpage clears this bar.

---

enrolled in an ESPN+ subscription on January 3, 2021 using the email address natemswartz@gmail.com. *See* Pl.'s SUMF ¶¶ 5, 8. Consistent with these facts, ESPN's business records confirm that Plaintiff did not have access to ESPN+ from December 1, 2020 to January 3, 2021. SUMF ¶ 7. Plaintiff nonetheless takes the position that "Swartz's access to his ESPN+ account was [not] terminated at any time." *See* Pl.'s SUMF ¶ 6. All that Plaintiff cites to purportedly refute ESPN's business records is Plaintiff's own, self-serving testimony that he "never stopped using ESPN" and emails showing that his account was used "to sign into ESPN.com." *Id.* But ESPN.com and ESPN+ ***are not the same product***—only ESPN+ requires a paid subscription to access its exclusive content. Thus, Plaintiff's testimony and the emails he received are entirely consistent with ESPN's business records showing that he did not have an active ESPN+ subscription between December 1, 2020 and January 3, 2021.

[7] Plaintiff ignores that this Court previously recognized the agreement at issue is a "clickwrap agreement," not a "browsewrap" agreement. *See* ECF No. 29. These agreements are enforceable when a plaintiff had "reasonable notice of" the Agreement and took action to unambiguously "manifest[] [his] assent" to the Agreement. *See* Br. at 13 (citing *Defillipis,* 2014 WL 4198015, at *6 (citation

Indeed, Plaintiff ***concedes*** (and, in fact, fails to even address) that the Disney Bundle activation webpage satisfies four of the five elements that courts consider when evaluating the sufficiency of a webpage's notice. *Cf.* Br. at 14–19 (describing five key elements considered). Specifically, Plaintiff concedes that (i) the Subscriber Agreement hyperlink is displayed in a blue color that is "typically used to signify the presence of a hyperlink" (*id*. at 14 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022)); (ii) the hyperlinked Subscriber Agreement is temporally and spatially proximate to the "AGREE & CONTINUE" assent button (*id*. at 17–18); (iii) the surrounding webpage draws attention to, rather than distracts from, the fact that Plaintiff was entering a subscription agreement (*id*. at 18); and (iv) the Activation Acknowledgement and the "AGREE & CONTINUE" assent button each explicitly denote the legal significance of Plaintiff's clicking action (*id*. at 18–19).[8]

omitted)). Notwithstanding how Plaintiff characterizes the agreement at issue, Plaintiff does not dispute that this is the applicable standard. *See* Opp'n at 8–9 (citing *Checchia v. SoLo Funds*, 2023 WL 3868369, at *5 (E.D. Pa. June 7, 2023) (evaluating sufficiency of hybrid agreement notice under same standard)).

[8] Plaintiff attempts to brush aside ESPN's well-supported five factors as merely being "culled from different cases and jurisdictions," which are "not binding on this Court." Opp'n at 14, n.6. But Plaintiff himself has previously relied on each of the cases cited. *See* Pl.'s Opposition to ESPN's Initial Motion to Compel Arbitration, ECF No. 21, at 14–15, 18 (citing *Berman*, 30 F.4th at 857; *Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022); and *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019)).

Plaintiff only contends that ESPN does not meet the first element considered by courts—whether the notice is "conspicuously set off" from the surrounding text—because he argues the Activation Acknowledgment is purportedly displayed in "tiny gray font considerably smaller than the font used in the surrounding website elements." Opp'n at 13 (citing *Berman*, 30 F.4th at 856–57). Plaintiff principally relies on the Ninth Circuit's decision in *Berman*. *Id.* But a simple visual comparison between the webpage here and that in *Berman* makes clear why Plaintiff's comparison is inapt:


hulu
Disney+
ESPN+
STEP 1 OF 2
Enter your email
mary.poppins@gmail.com
Yes! I would like to receive updates, special offers, and other information from Disney+, ESPN+, and The Walt Disney Family of Companies.
Disney will use your data to personalize and improve your Disney+ experience and to send you information about Disney+. You can change your communication preferences anytime. We may use your data as described in our Privacy Policy, including sharing it with the family of companies. By clicking "Agree & Continue," you agree to our Subscriber Agreement and acknowledge that you have read our Privacy Policy.
AGREE & CONTINUE


Shipping Information Required
Complete your shipping information to continue towards your reward
First Name
Last Name
Street Address
ZIP Code
Telephone
Date of Birth:
MM
DD
1923
Select Gender:
Male
Female
Continue »


Samples & Savings
Welcome back, stephanie!
Confirm your ZIP Code Below:
93930
I AGREE
This is correct, Continue! »
Getting Free Stuff Has Never Been Easier!
JOIN US!
EXPLORE!
SAVE BIG!
Getting Free Stuff Has Never Been Easier!
JOIN US!
EXPLORE!
SAVE BIG!

A more relevant webpage comparator can be found in *Patrick v. Running Warehouse, LLC*, 2024 WL 542831, at *4 (9th Cir. Feb. 12, 2024).




*Patrick v. Running Warehouse, LLC*, Case No. 22-56078, ECF No. 14, at 5 (June 26, 2023).

In *Patrick*, the Ninth Circuit reviewed the notice above—which is displayed in an appreciably smaller text compared to the surrounding web elements than the notice on the Disney Bundle activation webpage—and held that "[t]he notice is clear and legible," rejecting the plaintiff's comparison to *Berman*. *Patrick*, 2024 WL 542831, at *477. The Ninth Circuit specifically noted that, in *Berman,* the text was

"printed in a tiny gray font … [that is] so small that it is barely legible to the naked eye," which "is not the case here." *Id*. Likewise, the Activation Acknowledgment text at issue here is far from being "barely legible to the naked eye." Rather, it is displayed in legibly sized font, materially similar to the surrounding text, and is offset in white against the surrounding dark background. The Disney Bundle activation webpage even goes a step further than the webpage the Ninth Circuit accepted in *Patrick*. The large blue "AGREE & CONTINUE" button denotes legal significance and directs the user's attention to the Activation Acknowledgment, whereas the notice in *Patrick* simply asks the user to press a "Place Order" button.

Because Plaintiff failed to identify any cognizable flaws with the notice provided on the Disney Bundle activation webpage, Plaintiff advances three additional arguments—but none have any legal support.

*First*, Plaintiff asserts that the notice ESPN provided was not sufficient because Plaintiff "had to proceed through *five* screens before even reaching the activation acknowledgement page." Opp'n at 9. Plaintiff provides no explanation for how proceeding through prior webpages—each of which exist on Verizon's, not Disney's, website—would impact the conspicuousness of the notice provided on the Disney Bundle activation webpage. Tellingly, Plaintiff fails to cite a single case that considers the number of webpages in a sign-up flow as a relevant factor for evaluating the sufficiency of the notice, and ESPN is aware of none.

*Second*, Plaintiff speculates on how the notice provided could have been improved. But this too is entirely irrelevant. The question before the Court is whether notice *actually provided* was "reasonably conspicuous," not whether the notice *could have been* even more conspicuous. *See* Br. 13–21 (every case cited evaluated the reasonableness of the notice actually provided). Again, Plaintiff fails to cite a single case analyzing whether there were additional elements that could have made the notice more conspicuous. *See* Opp'n at 14–15.

*Third*, Plaintiff makes much out of the fact that he "did not need to view the Subscriber Agreement." *See* Opp'n at 14.[9] But as courts routinely hold, "[w]hether [plaintiff] actually read[] the terms to which [he] assent[ed] is immaterial" to determining whether a plaintiff had inquiry notice. *Del. River Waterfront Corp. v. Wellspring Software, Inc.*, 2022 WL 17869139, at *4 (E.D. Pa. Dec. 22, 2022). Indeed, a plaintiff "need not actually read the terms and conditions or click on a hyperlink that makes them available as long as [he] has notice of their existence." *Hine v. LendingClub Corp.*, 2023 WL 8113234 (W.D. Pa. Nov. 22, 2023) (citation

---

[9] Plaintiff also cites to studies that purportedly "show[] that most consumers do not click on hyperlinks to access the Subscriber Agreement[.]" Opp'n at 15. In addition to being irrelevant to the question of inquiry notice, these studies are inadmissible hearsay, which should not be considered under Fed. R. Civ. P. Rule 56. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

omitted); *see also* Br. at 12 (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (a party's "failure to read a contract does not excuse a party from being bound by its terms")).

At bottom, the Disney Bundle activation webpage's straightforward Activation Acknowledgment, including a blue hyperlinked Subscriber Agreement, located directly above the "AGREE & CONTINUE" assent button, reasonably placed Plaintiff on inquiry notice of the Subscriber Agreement, which he assented to by clicking the "AGREE & CONTINUE" button.

### C. Plaintiff Concedes That He Received Additional Notice of the Arbitration Agreement Through the 2022 Update Email And Continued to Use His Disney Bundle Services

Plaintiff concedes that he received the *exact same* 2022 Update Email that the Northern District of California found provided "reasonably conspicuous notice of the Subscriber Agreement" to users. *See* Pl.'s SUMF ¶ 23; *Sadlock*, 2023 WL 4869245, at *13. Since then, Plaintiff "unambiguously manifested [his] assent . . . by continuing to use the [ESPN+] streaming service after he received the email[ ]." *Id.* at *13.

Each of the decisions cited by Plaintiff are inapposite and should be disregarded. *See* Opp'n at 16–21 (citing *Jackson v. Amazon.com, Inc.,* 65 F.4th 1093 (9th Cir. 2023); *Gezu v. Charter Commc'ns*, 17 F.4th 547 (5th Cir. 2021); *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080 (N.D. Cal. June 29, 2022), *appeal dismissed*,

2023 WL 2455684 (9th Cir. Jan. 20, 2023); *Grice v. Uber Techs., Inc*, 2020 WL 497487 (C.D. Cal. Jan. 7, 2020); *Anand v. Heath,* 2019 WL 2716213 (N.D. Ill. June 28, 2019); *Nghiem v. Dick's Sporting Goods, Inc.*, 2016 WL 9131962 (C.D. Cal. July 5, 2016)). The Court need not look to Plaintiff's cited authorities—each of which evaluate (i) different emails (or other different forms of notice); (ii) updating different terms of use; (iii) for different services—to decide this Motion when there is relevant case law evaluating the exact email at issue here.[10]

There is also no dispute that Plaintiff received and opened the 2022 Update Email, and subsequently opted to continue using ESPN+ services. Plaintiff testified that he views and clicks on—thereby marking as read in his inbox—every email sent by Disney to his natemswartz@gmail.com email address. *See* ECF No. 45-8 at 109:19–110:7. This would include the 2022 Update Email, and makes the facts here a far cry from the scenario that the *Sadlock* court sought to guard against—namely

[10] For instance, in *Jackson*, the court had no occasion to evaluate the sufficiency of notice provided by the update email at issue in that case. *Jackson*, 65 F.4th at 1098–1100. Amazon failed to produce the email that it alleged provided the plaintiff with notice of its updated terms and conditions, or evidence that the plaintiff had ever received that update email. *Id.* Amazon did not even provide a description of the alleged update email. *Id.* at 1098. Likewise, in *Sifuentes*, Dropbox never presented evidence that the plaintiff actually received any email updating its terms of service. *See* 2022 WL 2673080 at *4 n.4. By contrast, Plaintiff received, marked as read, and produced the email the *Sadlock* court found provided "reasonably conspicuous notice." 2023 WL 4869245 at *13.

when an email is "shunted into a spam folder" and a customer has no ability to review it. 2023 WL 4869245 at *13.

As Plaintiff's own cited authorities demonstrate, it is of no consequence that Plaintiff ostensibly declined to review the 2022 Email Update in detail once receiving it and marking it read. *See Gezu*, 17 F.4th at 553 ("[Defendant's] valid notice is not frustrated by [plaintiff's] assertion that he did not read the [update] email"); *Grice*, 2020 WL 497487 at 11 ("Plaintiff's decision not to review the updated terms because it was inconvenient for him to do so does not create a dispute as to whether he was given reasonable notice of the terms"). The 2022 Update Email gave Plaintiff individualized and explicit notice of the Subscriber Agreement, including by stating in the subject line "We're updating our Subscriber Agreement." *See* SUMF ¶ 23; *cf.* ECF No. 45-8 at 19:2–9 (testifying that Plaintiff decides whether to review an email on a "case-by-case basis" from the "relevant subject line"). This satisfies the requirements of inquiry notice, and Plaintiff unambiguously manifested his assent to the Subscriber Agreement by continuing to use ESPN+ services. *See Sadlock*, 2023 WL 4869245, at *13 ("emails followed by continued use is sufficient to establish assent"); *see also In re Facebook Biometric Info. Priv. Litig.*, 185 F.Supp.3d 1155, 1167 (N.D. Cal. 2016) (noting that plaintiffs "were provided notice that the terms of the user agreement were changing through an email from Facebook sent directly to the email addresses each plaintiff had on file with Facebook" and

that "individualized notice in combination with a user's continued use is enough for notice and assent"); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (stating that "[c]ourts have found that when consumers receive emails such as this one [e.g., having a subject line stating that Uber had updated its terms of use, including in the body that the arbitration agreement had been revised, and providing a link to the updated terms], continued use of the service or product constitutes assent to the updated terms").[11]

**D. Plaintiff Concedes that He Continues to Use Disney Bundle Services Despite Knowing of the Binding Arbitration Provision**

Finally, Plaintiff is bound to arbitrate this dispute because he continues to use his Disney Bundle services, including ESPN+, even after learning of the Subscriber Agreement through ESPN's Initial Motion to Compel Arbitration. *See Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 613–14 (2d Cir. 2020); *In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021).

Plaintiff's arguments in opposition are based neither in fact nor law. Plaintiff cites no authority that disputes the reasoning or conclusions of *Nicosia* and *In re Ring*. Nor does Plaintiff attempt to distinguish the instant case from the facts presented in *Nicosia* and *In re Ring*. Plaintiff's only response is that the import of

---

[11] There is no requirement that an email updating a service's terms of use must also notify users that the continued use of that service will constitute assent, *see* Opp'n at 17, and the decisions in *Gezu*, *Grice*, and *Anand* do not impose such a requirement either. *See* 17 F.4th 547; 2020 WL 497487; 2019 WL 2716213.

these decisions would result in a "unfair and illogical punishment" to Plaintiff here. *See* Opp'n at 21. Not so. Even assuming that Plaintiff had not previously agreed to arbitrate "any dispute" with ESPN, Plaintiff was presented with a simple choice when ESPN filed its Initial Motion to Compel Arbitration: reconfirm his agreement to the Subscriber Agreement and continue to access subscriber-exclusive ESPN+ content or reject those terms and no longer subscribe to ESPN+ services.[12] What Plaintiff could not do is continue to avail himself of subscriber-exclusive ESPN+ services and then ignore the terms that govern the use of ESPN+ for every other subscriber. This is not a "gotcha" attempt, but is instead the consequence of the deal that Plaintiff knowingly struck with ESPN.[13] Plaintiff does not dispute that he had

---

[12] Plaintiff muses, but does not actually argue, that ESPN should have cancelled Plaintiff's subscription to ESPN+ when Plaintiff first filed the Complaint. Opp'n at 21. ESPN is not aware of any authority that would impose such an obligation—and Plaintiff offers none. Moreover, this notion ignores that the primary purpose of a motion to compel arbitration is to provide a mechanism for a party to enforce its private contractual right to arbitration. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). The enforceability of an arbitration agreement does not turn on whether or not Plaintiff later "believe[s] he was he was bound" to the agreement, as Plaintiff appears to suggest. *Contra* Opp'n at 21.

[13] The Court should not countenance Plaintiff's frivolous suggestion that ESPN engaged in improper gamesmanship because it did not advance this argument in its Initial Motion to Compel Arbitration. *See* Opp'n at 22 n.7. The undisputed facts that Plaintiff continued to pay subscription fees associated with his Disney Bundle account and continued to stream videos and access exclusive content using ESPN+ provide further, independent grounds to grant ESPN's Motion, which were only uncovered as a result of the limited discovery ordered by the Court. *See* ECF No. 29. Simply put, the Court's order of limited discovery accomplished the goal it was fashioned to achieve.

knowledge of the Arbitration Provision after ESPN filed its Initial Motion to Compel Arbitration. And Plaintiff does not dispute that—despite this knowledge—he continued to stream videos on ESPN+ and pay a subscription fee for Disney Bundle services, including ESPN+, for *well over a year* after ESPN filed its Initial Motion to Compel Arbitration. *See* Opp'n at 21–22; Pl.'s SUMF ¶ 26. Those concessions are dispositive. The Court should grant ESPN's Motion.

## CONCLUSION

For the foregoing reasons, ESPN respectfully requests that the Court issue an order granting the Motion, compelling arbitration, and staying this action pending the completion of individual arbitration proceedings.

Dated: March 15, 2024

Respectfully submitted,

By: /s/ *Jasmeet K. Ahuja*
Jasmeet K. Ahuja (PA ID # 322093)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Allison M. Holt Ryan (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
allison.holt-ryan@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 15, 2024, a true and correct copy of the foregoing document and supporting documents were filed using the Court's CM/ECF System, which will serve all counsel of record.

Dated: March 15, 2024 By: /s/ *Jasmeet K. Ahuja*

**CERTIFICATE OF CONCURRENCE**

I hereby certify that pursuant to Local Rule 7.1, counsel for movants sought concurrence from the parties. Plaintiff's counsel did not concur.

Dated: March 15, 2024 By: /s/ *Jasmeet K. Ahuja*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATE SWARTZ, on behalf of himself and all others similarly situated,<br>*Plaintiff*,<br>v.<br>ESPN Inc.,<br>*Defendant*. | Civil Action No. 1:22-cv-01523<br>(Hon. Karoline Mehalchick) |

**LOCAL RULE 7.8(b)(2) CERTIFICATE**

I hereby certify, pursuant to Middle District of Pennsylvania Local Rule 7.8(b)(2), that the foregoing Brief in Support of Defendant's Renewed Motion to Compel Arbitration and Stay This Action consists of 4,442 words, exclusive of the caption, Table of Contents, and Table of Authorities, as counted by the "word count" feature of the Microsoft Word word-processing system.

Dated: March 15, 2024 By: /s/ *Jasmeet K. Ahuja*